Collins v. Warren.

COLLINS, Defendant in Error, v. WARREN *et al.*, Plaintiffs in Error.

1. A. and B. were partners; a lot of ground was conveyed to them. The lot was improved, a dwelling house built thereon became the residence of B. B., after living in it for several years, died leaving his widow in possession of it. Previous to the death of B., A. instituted a suit against B. for an adjustment of the partnership concerns, and prayed a sale of the said lot for the payment of partnership debts, it being alleged to be partnership. After the death of B., the suit was revived against his administrator only. After the institution of the suit and before the death of B., C. bought all the interest of B. in the lot at sheriff's sale, it having been mortgaged to C. A. made C. a defendant by supplemental bill, on the ground that he had purchased with notice of the rights of A. A decree was rendered against B.'s estate, and a sale of the lot was awarded, and the interest acquired by C. was postponed until the debt adjudged to A. should be first paid. At the sale under the decree A. became the purchaser of the lot. He instituted an action of ejectment against the widow of B: *Held*, that not having been made a party to the suit of A. she was not bound by the decree, and it could not be used as evidence against her; that under the circumstances, the plaintiff in ejectment could only recover an undivided half of the premises and corresponding damage.

2. Where a lot with a dwelling house thereon is owned by two persons as tenants in common, and one dies in possession of the whole, leaving a widow residing therein, she will not be entitled, under the sixteenth section of the dower act of 1845 (R. C. 1845, p. 432) as against the surviving tenant in common, to remain in possession of the whole lot until dower is assigned her.

*Error to Hannibal Court of Common Pleas.*

The facts in evidence sufficiently appear in the opinion of the court. The court, at the instance of the plaintiff, instructed the jury as follows: "Although it may appear from the evidence that Thomas N. Warren in his lifetime and during his coverture with Maria Warren, the defendant, was

seized of an estate of inheritance in the whole or any undivided part of the premises in controversy; and although it may also appear that said Maria is the widow of said Thomas N. Warren, and that the said Thomas N., at the time of his death, was residing on the premises in question, yet if it further appear from the evidence that, after the said Thomas N. so became seized and before his death, all the interest and estate of the said Thomas N. were duly sold and conveyed to How, Claflin & Cook, and that the interest and estate so conveyed to How, Claflin & Cook were, before the institution of this suit, conveyed and transferred to the plaintiff, the jury should find a verdict for the plaintiff for the possession of the premises in question. And the court instructs the jury that the document read in evidence, purporting to be a deed from sheriff King to How, Claflin & Cook, if genuine, is sufficient in law to pass the title and estate of said Thomas N. Warren in said premises to said How, Claflin & Cook; and that if the document read in evidence, purporting to be a deed from sheriff Maddox to the plaintiff Collins, is genuine, the same, with the proceedings on which the same is based, is sufficient in law to pass to the plaintiff all the title and right of said How, Claflin & Cook in the premises."

The following instruction asked by the defendant was refused by the court: "By the deed of Higbee to Warren and Collins of the lot during the coverture of defendant, and her husband dying in possession of the mansion house, the defendant had a dower interest in said lot and house, and she was entitled to the possession of said house and lot until her dower was assigned to her, and they should therefore find for the defendant."

The jury found for the plaintiff.

*Porter & Harrison,* for plaintiff in error.

I. Warren was seized of an estate of inheritance in the premises. The husband had a mansion house thereon. Mrs. Warren had not relinquished her right to dower. She had the right to remain in possession until dower was assigned

her. The instruction given was erroneous. (R. C. 1845, p. 430; 4 Kent, Comm. 62; 1 Halst. 369; 3 Halst. 129; 3 J. J. Marsh. 48.)

*Dryden* and *Lipscomb & Lakenan*, for defendant in error.

I. The instruction given was correct. Until dower was assigned defendant had no right to enter upon the property in question. (3 Bac. Abr. 212; 4 Kent, Com. 59; 7 Johns. 247; 17 Johns. 167; 20 Johns. 411.)

SCOTT, Judge, delivered the opinion of the court.

It appears from the record and pleadings in the case that Wm. R. Collins and Thomas N. Warren, the husband of the defendant Maria Warren, were partners. In December, 1848, Stephen Higbee conveyed the lot in controversy in this suit to the said Collins and Warren. The lot was improved, it is alleged, with the partnership funds, and the house built thereon became the residence of T. N. Warren, until some time in 1852, when he died, leaving the defendant, his widow, in possession of it. Prior to the death of Warren, his partner Collins instituted a suit against him for the adjustment of the partnership concerns, and for the sale of the lot in controversy for the payment of the partnership debts, it being alleged to be partnership property. Warren died during the pendency of this suit, and it was revived only against his administrator. Afterwards a decree for a large sum was rendered against Warren's estate, and a sale of the lot was awarded to satisfy it. Under this decree, Collins became the purchaser of the lot and received a deed therefor in 1856. The suit by Collins against Warren was begun in February, 1849; and in March, 1849, How, Claflin & Cook bought, at a sheriff's sale, all the interest of Warren in the lot, it having been previously mortgaged to them. After this, Collins filed a supplemental bill making How, Claflin & Cook parties defendant to his suit, on the ground that they purchased with notice of his rights, and by the decree their

interest was postponed until the debt adjudged to Collins should be first satisfied.

All this controversy has arisen from the failure of Collins to make Mrs. Warren a party to his suit after the death of her husband. She, not being a party to the suit, is not bound by the decree pronounced in it; nor is it any evidence against her. But it must be said that if the lot was partnership property, and her husband as partner was insolvent, and it was sold for the payment of the partnership debts, she would not be entitled to dower in it. (Duhrig v. Duhrig, 20 Mo. 174.) As she however was not a party to the suit, she is not concluded by the decree, and has a right, in a suitable proceeding, to contest the truth of the facts on which it is founded. It follows, then, that the instruction given by the court at the instance of the plaintiff was erroneous. Although the sheriff's deed to How, Claflin & Cook might have passed all of Warren's interest in the lot, and left him without any, yet that is an outstanding interest not in Collins, and, this being an action of ejectment, he being a plaintiff can not recover on a title in a third person. It is true that the decree postponed this title to that acquired under it, but that decree not being evidence against the defendant, Maria Warren, it can not be used to show any title in Collins as against her.

If the decree in Collins' suit, the mortgage to How, Claflin & Cook, and the subsequent sheriff's deed to them, be thrown out of the case, the plaintiff's right to recover must stand on the deed of Higbee to Collins and Warren. This deed makes them tenants in common of the lot in controversy, and on the death of Warren his widow would be entitled to dower in his interest in the lot; and this being a suit to eject her from the possession of the entire lot, she relies on the dower law in the code of 1845, and defends herself under the sixteenth section thereof, which enacts that until dower be assigned the widow may remain in and enjoy the mansion house of her husband and the messuages or plantation thereto belonging, without being liable to pay any rent for the same.

Now, although, under this section, a widow may sue to recover her quarantine when ejected, or may defend herself under it against an action of ejectment by the heir or those claiming under him, yet, under the case as stated, we do not consider the section referred to furnishes her any defence to this action. Two are tenants in common of a house and lot; one of the tenants, who is in possession, dies, leaving a widow; can such widow, under the above cited section, hold the possession of the entire house and lot, freed from the payment of rent, to the exclusion of the surviving tenant? Could the legislature have intended that the section should apply in such a case, and the widow be entitled to retain the entire house and lot, excluding the cotenant and depriving him of all rent for his property? Now, whether the widow's right be a third, a half, or a child's part, on what principle can the law give her a right to remain in the entire mansion house at the expense of a cotenant, who has a great, if not a greater, interest in it than she has? It may be competent to the legislature to do such an act by laws operating prospectively, but respect for that department of the government would prevent us from holding the opinion that any such thing was ever contemplated. The law was only designed for the cases where the husband died the sole owner of the mansion house. It must be his and his exclusively. It was never intended that the widow should have her quarantine at the expense of those who are in no ways connected with her.

This, then, being a case in which the widow can not have any quarantine, she stands as she would at common law, when her quarantine had expired. She would be ejected by the heirs, and made to pay damages. But this suit is not by the heir. It goes on the hypothesis that the plaintiff is only entitled to the one undivided half of the house and lot. On what ground, then, can he recover the entire lot and damages for the occupation of the whole of it? He could only be entitled to the half of the lot, and damages for that half, going on the supposition on which the case is now put. Whether

Mrs. Warren had any title or not, the deed from Higbee, on which alone the case now rests, showing that he is only entitled to one half of the lot, he can recover no more than that quantity, and of course only corresponding damages. (Gray v. Givens, 26 Mo. 291.)

We are of the opinion that in this action the plaintiff can recover one undivided half of the lot and corresponding damages; and this cause is reversed and remanded, as it appears that the judgment is for the entire lot and for full damages.

Reversed and remanded. The other judges concur.