[Filed February 1, 1892.]

F. O. WORLEY v. MARY E. TAYLOR ET AL.

EXECUTORS—CHARGE UPON LANDS—POWER OF SALE.—The mere charging lands with specific debts does not give the executor of a will creating the charge power to sell the lands, but they descend to the heir or devisee subject to the charge.

CHILD NOT NAMED IN WILL—INTEREST IN LAND.—A will which does not name or make provision for a child of the testator although born after making the will, is void as to such child; and a sale of land by the executor under authority of the will, does not divest the child's estate therein.

Douglas county: M. L. PIPES, Judge.

Plaintiff appeals. Affirmed.

*J. C. Fullerton, G. W. Colvig,* and *E. B. Preble,* for Appellant.

*Lane & Lane,* and *W. R. Willis,* for Respondents.

LORD, J.—This is a suit in equity brought by the plaintiff against H. M. Bland, defendant, and others, to quiet title to certain land described in the complaint. In substance, the facts alleged are these: On the twenty-sixth day of November, 1879, the plaintiff purchased the land in question from one Lewis Chapman, and has been in the possession of the same ever since. On the twenty-first day of July, 1879, the said L. Chapman purchased the same from Mary E. Bland, now Mary E. Taylor, who was the widow of Henry Bland, for the consideration of three thousand five hundred dollars. The other defendants, except Charles Taylor, are the children and heirs at law of said Henry Bland, deceased, who, on the sixth day of August, 1873, was the owner of said premises, and made his will whereby he devised and bequeathed all his real and personal property as follows: To Mary E. Bland, all his real property after

payment of all his just debts; and to each of his six children therein named, the sum of twenty-five dollars. Mary E. Bland was nominated executrix of said will. Henry Bland died on the twenty-fifth day of September, 1874, but after the making and execution of said will, and before the death of said testator, a son, Henry M. Bland, one of the defendants herein, was born. The said will was duly admitted to probate, and thereafter, on the twelfth day of April, 1875, the said Mary E. Taylor, then Mary E. Bland, was duly appointed and afterwards duly qualified as executrix. On the third day of May, 1875, said executrix filed in the county court an inventory and appraisement of all the property belonging to the said estate, and on the thirty-first day of March, 1880, the said executrix filed in said court her final account in settlement of said estate, from which final account it appeared that the sum of all the debts presented to and allowed and paid by her as such executrix against said estate, together with the expenses of the administration thereof, equalled the sum derived by said executrix from the sale of all personal and real property belonging to said estate. On the sixth day of July, 1880, the said court, by order duly made, accepted the said final account and confirmed the same in all things, and by said order released said executrix and her bondsmen from all further liabilities in said matter. The said real property sold and conveyed by the defendant Mary E. Taylor to the said Lewis Chapman, as aforesaid, was worth no more than the sum paid therefor by the said Chapman to the said defendant. It was sold for the sole purpose of settling the debts as aforesaid, and was applied by her as such executrix in the payment of said debts; and all the property belonging to said estate was sold and the proceeds applied to the payment of the just debts of said testator, and none of the heirs named in said will ever received anything by virtue of the provisions thereof. The defendant Henry M. Bland claims some interest in the said real property adverse to said plaintiff for the reason that said defendant was not

named in the will of his father, the said Henry Bland, deceased, the nature and extent of which is unknown. The other defendants claim adversely to plaintiff, etc., and said claim of defendants is without right. The complaint prays that the plaintiff be decreed to have a good and valid title, and that the defendants be debarred from asserting any claim adverse to the plaintiff.

The answer of the defendant Henry M. Bland by his guardian *ad litem* is to the effect that he denies that the plaintiff is the owner of the real property in question or any part thereof more than an undivided six-sevenths thereof; denies that his claim is without any right whatever, etc., but alleges that he is the owner in fee as heir at law of Henry Bland, deceased, of an undivided one-seventh interest of, in and to the premises described in the complaint, and prays that he may be adjudged and decreed to be the owner of the same.

The reply put in issue all the material facts alleged in the answer. The case was argued and submitted to the trial court upon the pleadings, and the judgment rendered therein was to the effect that the plaintiff and the defendant Henry M. Bland, minor, are owners in fee simple as tenants in common of the described premises; the plaintiff F. O. Worley of the undivided six-sevenths thereof, and the defendant Henry M. Bland of the undivided one-seventh thereof.

By the terms of the will, when the testator devised the land in dispute to his wife, then Mary E. Bland, now the defendant Mary E. Taylor, "after the payment of all his just debts," according to the prevailing doctrine of English equity jurisprudence, he created a charge by implication, though not specific, upon the land devised. (2 Story's Eq. Jur. § 1246; 3 Pomeroy Eq. § 1247, and notes.)

The contention for the plaintiff is, that when lands are so charged in the will of the testator for the payment of debts, a power to sell the lands will be implied to the executor and devisee, and, therefore, that the executrix and devi-

see of the present will had the implied power to sell the land in controversy for the payment of debts as alleged. But this doctrine of an implied power of sale has had doubts cast upon it by the case of *Doe* v. *Hughes*, 6 W. H. & G. 223, in which it was held that there is no implied power in executors to sell lands, arising from a mere charge of the debts upon the land made by the will.

At common law the lands of a deceased person were not liable for his debts; nor even on specialty obligations except when the heir was bound. "But equity," as Ruffin, J., said, "ever anxious to have just debts paid, strove to apply the real estate to their satisfaction since otherwise they would remain unpaid. This was effected by holding the devisee to be a trustee for creditors, if the testator gave any intimation that such was his wish. The slightest expression was sufficient; as, 'if he talks about his debts in the beginning of his will,' for it is considered that he meant to go beyond the law, in making a provision; else why not leave it to the law by being silent. *Williams* v. *Chitty*, 3 Ves. Jr. 545." (*Dunn* v. *Keeling*, 2 Dev. 285.)

It was for this reason — to effect the just purpose of paying the debts of the deceased — that equity gave to such general expressions in a will such construction and meaning. But the necessity for such construction in many jurisdictions does not now exist. The necessity as well as the reason for it has been superseded by statutes which make the lands of the decedent liable for the payment of all his debts. Under the provisions of our code, the real estate of every deceased person is chargeable with the payment of his just debts, funeral charges, and the expenses of administration, except that the personal estate is primarily chargeable with them, unless the deceased by his will has otherwise directed. (Hill's Code, § 1142, *et seq.; Wright* v. *Edwards*, 10 Or. 298.) Under these provisions, it makes no difference whether the decedent made a will or not, or what provisions it contains, the real estate is liable whenever it is required for the payment of debts; but when the

estate is more than sufficient to pay all debts, it is competent for the deceased to exonerate the personalty and make his real estate primarily liable to the extent authorized by the provisions cited.

In *Smith* v. *Soper*, 32 Hun, 47, the court says: "There is a broad distinction between a general clause in a will for the payment of debts and one for the payment of a specified legacy or debt with respect to the application of the statutes. The clause in question in this will simply provides for what the law required if there had been no such clause, to-wit, that the debts should be a charge upon the property of the testator."

In *Cornish* v. *Nelson*, 6 Gill, 299, it was held that since the act of 1785 the insertion of the words, "and after my debts and funeral charges are paid," in a will are immaterial and inoperative; that the act renders the real estate in aid of the insufficient personalty equally liable for the payment of debts, whether the words be contained in the will or not, or whether the deceased died testate or intestate, and that they are now of almost unmeaning form and rarely of any import.

*In re Will of Fox*, 52 N. Y. 537, ANDREWS, J., said for the court: "The statute in this state has provided an ample remedy for creditors for the collection of their debts out of the real property of a decedent, and the implication of a power of sale in executors, from a simple charge of the debts upon the land, is unnecessary and ought not to be indulged."

In these cases, and others which might be cited, the words in a will, "after the payment of my debts," are considered not to have any import or effect beyond the statutory charge and are only coëxtensive with it. While the doctrine of charging lands by implication from such general expressions has been adopted in some jurisdictions in this country, it has not been without some modification. Many of them will not hold that the intent to charge the estate is implied from such general expressions, but only when the

XXI OR.—38.

intent to create the charge is clear and certain.   Mr. Perry says: "In the United States, both real and personal property are liable for the debts of a deceased person; and no valid trust can be created by will for the payment of debts in either personal or real estate to the injury of the right of creditors.   The statutes of the several states point out how estates shall be administered for the payment of debts. Creditors in all cases have the right to demand payment according to the provisions of the statute.   Thus, trusts, charges, or other directions in wills for the payment of debts, have no legal operation, so far as creditors are concerned."   (2 Perry Trusts, § 559.)

In the case at bar there is no direction in the will that the land should be sold or any express powers conferred upon the executrix to sell it; nor is there any intent to create a specific charge upon the land, or other than a general charge by implications from the words, "after the payment of my just debts," which, as we have seen, in many jurisdictions, will not be indulged; and in such case, and in view of our statutes and the authorities, it seems to us to be the better doctrine to hold that there is no implied power to executors to sell lands, arising from a mere charge of debts upon them made by the will.   "The mere charging lands with specific debts," says Mr. CROSWELL, "does not give the executor this power of sale, but the lands descend to the heir or devisee subject to the charge, and the executor has no power to sell the land to enforce the charge."   (Croswell Ex. and Admrs. § 331.)   As a consequence of these views, no such power can be applied to sustain the sale of the land in controversy as against the minor defendant Henry M. Bland.

But even if this point were doubtful, or however this may be, there is another objection to the contention for the plaintiff which is fatal to his claim.   This is as to the legal rights of the defendant Henry M. Bland to his share of the real property devised as affected by the statute.   He was not named or provided for in the will, nor was there any

provision in the will for the sale of the land by the exec-
utrix.  The sale by her to Chapman was private, and not
under the provisions of the statute.  The inquiry then is,
could the sale of the lands in controversy by the executrix
convey the interest therein of the minor Henry M. Bland,
who was born after the making of the will and before the
death of the testator, and who was not named or provided
for in it.  Section 3075, Hill's Code, provides as follows:
"If any person make his last will and die, leaving a child
or children, or descendants of such child or children, in
case of their death, not named or provided for in such will,
although born after the making of such will, or the death
of the testator, every such testator, so far as shall regard
such child or children or their descendants not provided for,
shall be deemed to die intestate; and such child or children,
or their descendants, shall be entitled to such proportion
of the estate of the testator, real and personal, as if he had
died intestate; and the same shall be assigned to them, and
all the other heirs, devisees, and legatees shall refund their
proportional part."  This section has received a construction
by this court which is decisive of the rights of the minor
defendant not named or provided for in the will.  In
*Northrop* v. *Marquam,* 16 Or. 186, Hettie Northrop was born
after the making of her father's will; she was not named
or provided for in the will, and her father died about eight
months before her birth.  STRAHAN, J., said: "As to
Hettie's interest in her father's estate, he is deemed to have
died intestate.  While the will is valid and effectual as to
all the children named or provided for therein, it is no will
as to those not named or provided for, and any such child
will take under the law of descent in all respects as if no
will had been made.  Hettie, therefore, though *in ventre sa
mere* at the time of her father's death, took by inheritance
one-fourth of all the real estate of which he died seized in
this state."  And in reply to the claim that Hettie's interest
was divested by the sale by the executor, and that she was
compelled to accept her proportion of its proceeds upon the

doctrine of equitable conversion, as applicable to the interest of a child not named or provided for in the will, he said: "By the terms of the statute there is no will as to such child; it is a case of intestacy, and to hold that the estate which comes to him by inheritance in such case could be in any manner affected by the will would be in effect to disregard the plain provisions of the statute."

In construing a statute of similar import in *Smith* v. *Robertson*, 24 Hun, 213, wherein Carrie B. Scott, a child, was unprovided for by any settlement, and neither provided for nor in any way mentioned in the will of her father, the court says: "She stands, therefore, under the protection of this statute, which intended to provide for all persons similarly situated. Under it she must succeed to the same portion of her father's real estate as would have descended to her if he had died intestate. This is strong, emphatic language, and must receive satisfaction, which can only be given to it in full by allowing her to recover the land."

Upon appeal (*Smith* v. *Robertson*, 89 N. Y. 558), RAPALLO, J., in delivering the unanimous judgment of the court in affirmance, said: "We are of the opinion that on the death of John J. Scott, the testator, the real estate in controversy descended to his infant daughter, under the provision of 2 Rev. St. 65, § 49, in the same manner as it would have descended if the father had died intestate, and the infant does not take under the will or subject to any of its provisions. The statute, instead of declaring the entire will revoked by the subsequent birth of issue for whom no provision is made, renders it inoperative as to that portion of the testator's estate, which if he had died intestate would have descended or been distributed to after-born children. * * * The remedies given by statute against devisees, to recover a portion of the property where only a portion descends to an after-born child, do not operate to subject the estate of such child to a power of sale contained in the will, or to confine his remedies to a pursuit of the proceeds of the sale. He is entitled by the plain terms of the statute

to recover the same portion of the *corpus* of the estate which he would have been entitled to had his father died intestate."

Nothing, it would seem, could be added to make more plain the true spirit and meaning of the statute. The child not named or provided for in the will takes by virtue of the statute and against and notwithstanding the will. As to its interest in the realty, the father has died intestate, and the title instantly descends to such child as heir. When Henry Bland, the testator, died, the statute operated so as to vest his title in his child Henry M. Bland to its proportional share of his realty; and on the instant of his demise such child became absolutely seized of its proportion of the real property in controversy. He took by inheritance that proportion of the realty to which he was entitled unaffected by the will, whether it contained any power of sale, expressly or by implication. As a consequence, he could not be divested of his title by the alleged sale. But whether or not under such sale, where the money paid by the purchaser was applied to the payment of debts against the estate, such purchaser is entitled to be subrogated to the rights of the original holders of such claims to be charged as a lien upon the land so as to affect the interest therein of the defendant Henry M. Bland, we do not deem it necessary for us to consider, because it is not within the purview of the pleadings.

From these views it results that there was no error, and that the decree must be affirmed.