NELLIE COLEMAN v. CLYDE C. COLEMAN *et al.*

No. 13,415. (76 Pac. 439.)

SYLLABUS BY THE COURT.

1. WILLS—*Devise Construed—Words "Heirs of His Own" Defined.* A testator provided in his will that certain real estate devised to his four sons in equal proportions should not be sold until the youngest child arrived at the age of majority, and that in case any one of them should die " without heirs or legal representatives of his own" the survivors should take his portion of the estate equally. An infant son died after the death of the testator. *Held*, that the words "heirs of his own," when applied to the children of the deceased, meant lineal descendants or issue, and that the mother of the deceased child did not inherit his share of the real estate devised in the will.

2. ——— *Estates not Repugnant—Not a Perpetuity.* The terms of the will considered, and *held*, that the remainder over to the children of the testator is not repugnant to the estate previously granted; nor does the will create a perpetuity.

Error from Wilson district court; L. STILLWELL, judge. Opinion filed April 9, 1904. Affirmed.

*S. S. Kirkpatrick*, for plaintiff in error.

*T. J. Hudson*, for defendants in error.

The opinion of the court was delivered by

SMITH, J.: In November, 1888, Charles Coleman, the husband of plaintiff in error and the father of Clyde C. Coleman, Walter A. Coleman, and Charles F. Coleman, made his will. The wife was given a life-estate in the homestead, and other provisions were made for her support and maintenance. With respect to the real estate in controversy, it is necessary to consider the scope, effect and meaning of the third item of the will, which reads:

"I give and bequeath to my children, Clyde C. Coleman, Walter A. Coleman, and Charles F. Coleman, and such child or children that hereafter be born to me, all of my estate which is not herein specifically designated and bequeathed to others, to be divided equally among them, giving to each of my said children, to be paid out of my general estate, the sum of $1500, as each shall arrive at the age of twenty-one years. I also desire that none of my real estate shall be sold (excepting two lots of ground designated) until the youngest surviving child shall arrive of age, and in case either one of them shall die without heirs or legal representatives of his own the survivors shall take his portion of the said estate equally."

After the execution of the will another son was born and named Frederick. In December, 1888, Charles Coleman, the testator, died, and in May following the infant son Frederick died. Plaintiff in error, widow of the testator, declined to take under the will and elected to take under the law, and one-half of the real estate, except the homestead, was set apart to her by the probate court. The homestead is not in controversy.

This was an action in which the widow sought to recover the interest of the child Frederick, who died after his father, as his sole heir under the law of descents and distributions.   The surviving sons of Charles Coleman, deceased, who were defendants below, claimed under the terms of the third item of the will, above set out.   It was agreed that Mrs. Coleman had received her part of her husband's estate.   No part of the property involved in this action was needed to make up the widow's share under the law.   Plaintiff below failed to recover, and she has prosecuted proceedings in error to this court.

Counsel for defendants in error has incorporated in his brief the opinion of the trial court, which meets our approval.   We quote a part of it:

"It is correct that under the laws of Kansas and the facts of this case Mrs. Coleman was the legal heir of the boy Frederick when he died.   But did Coleman, the testator, when he wrote the word 'heirs' in his will, in the clause before quoted, use said word in its primary sense, meaning thereby any one who would inherit, or did he use it in what may be called a limited sense, and referring only to *children?*

"In 2 Underhill on Wills, page 822, it is said: 'It may appear from the context (of the will) that the testator has used the words "heir" and "heirs" not in their strict and primary sense, but in a limited sense, and as synonymous with the words "child" and "children."   Cases of this sort (says the author) are extremely numerous,' and, on the following page of his work, he cites over fifty cases decided (in the main) by courts of last resort in this country, wherein (the writer says) the word 'heirs' was held to mean 'children.'   I have not had time or opportunity to examine any of these cases, but I know of no reason for doubting the author's statement.   See, also, *Abbott et ux. v. Essex Company*, 18 How. (U. S.) 202, 15 L. Ed. 352; *Underwood et al. v. Robbins et al.*, 20 N. E. 230, and 15 A. & E. Encycl. of L., 2d ed., p. 324.

"It is also said, on pages 824 and 825, 2 Underhill, that 'a devise to M. and W., in general language, but, if either of them should *die without leaving an heir*, then, to the survivor, means, if either should die without leaving children.'

"In determining, therefore, in what particular sense the testator used the words 'heirs,' resort must be had to the context of the will and the instrument in general and as a whole. The important and controlling matter to arrive at is the intention of the testator, and that is the polar star by which courts should be guided in construing the terms of a will; and it is proper to remember, in that connection, that there is doubtless no class of written instruments wherein the courts have taken greater liberties in the construction, arrangement or substitution of words, in seeking to arrive at the intention of the maker, than in the case of wills. A familiar instance often arises as regards the conjunctions 'or' and 'and.' The rule is well settled that whenever necessary in order to ascertain the intent with which such words are used, and to give them effect when their meaning is ascertained, the disjunctive conjunction 'or' will be read as the copulative conjunction 'and,' and *vice versa*. (*Noble v. Teeple*, 58 Kan. 398, 401, 49 Pac. 598.) And numerous other instances, of the same general nature, might also be cited.

"Turning, then, to the will of Mr. Coleman, and examining the entire instrument, it will be noticed, in the first place, that the testator divided it into four separate clauses, which he styled 'items.' Item one simply contains some general directions about the payment of his debts; the fourth and last item relates to the appointment of his executors, and some other matters of detail; so that the second and third clauses of the will are the only ones containing testamentary dispositions. In item two he makes careful and seemingly ample provision for his wife. It is proper to infer that the testator, when he drew his will, believed that his wife would accept its provisions. If he had not thought so, it is hardly reasonable to suppose that he would have exercised the painstaking

care he did in the dispositions he made in this clause of the will in her favor.

"As bearing on this phase of the case, the following is quoted from 2 Underhill, p. 832 :

"'The fact that the testator has made a substantial testamentary provision for his widow in lieu of dower, and then has devised all the residue to "*his heirs*," may raise a strong presumption that he does not intend she shall take as one of his heirs.' The author cites a number of cases in support of this statement.

"Passing to item three in the will of Mr. Coleman, it will be seen that it deals entirely with the matter of the devises he made to his children. It begins by devising to them *all* his estate not previously designated and bequeathed to others, 'to be divided equally among *them*.' Further on he says : 'In case either of them shall die without heirs or legal representatives of *his own*, the survivors shall take his portion of the estate equally.' The dominant feature of this clause of the will is that the *children* should have *all* of the property not previously disposed of, and that they should have it in equal proportions. The testator was caring for his children as a class ; it was them and their children he had in mind when he drew this clause of his will ; the wife is not even alluded to. And to hold that when he used the terms 'heirs or legal representatives,' he contemplated and intended in the event of the death of any of his children without issue that the shares of such children should all vest in the wife instead of the surviving children, it seems to me would be most manifestly at variance with the general purport and tenor of the will, as gathered from the entire instrument.

"It might also be said that such an interpretation would be directly opposite to the practical construction given the will by the plaintiff herself, as shown by her conduct in the premises and acquiescence in the rights of the surviving children to the property in controversy, for more than ten years prior to the commencement of this action."

The case of *Abbott et ux. v. Essex Company*, 18 How.

202, 215, 15 L. Ed. 352, cited in the opinion of the learned judge, is particularly applicable. The clause of a will before the court reads :

"It is my will that if either of my said sons, namely John or Jacob, should happen to die without any lawful heirs of his own, then the share of him who may first decease shall accrue to the other survivor and his heirs."

It was held that by use of the words "lawful heirs of his own" the testator meant lineal descendants or issue.

It is next contended by counsel for plaintiff in error that if the words "heirs or legal representatives of his own" mean surviving children the remainder over to the survivors is repugnant to the estate previously granted, and void. The intention of the testator must be arrived at from the will itself, considering all parts of it. In *Palmer v. Blodgett*, 60 Kan. 712, 57 Pac. 947, such rule of construction was applied to a deed for the purpose of ascertaining the intention of the grantor. The will before us is divided into four separate items. There was no attempt in any of these items to devise a fee-simple estate in the property to the wife, as was done in *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965. The remainder over to the surviving children in the event of the death of one of them is consistent with the entire will. It is further argued :

"These children having survived the testator they took the whole estate freed from the limitation over, in the event of the death of one of them. The limitation will be held to refer to the time of the death of the testator ; in other words, the limitation contained in the will referred to the death of the testator, and inasmuch as all the children survived him the estate became absolute in the four children and the limitation of no avail."

The court below correctly held that the will did not make an immediate gift of the property to the children. The executors were to have charge of the real estate until the youngest child should become of age, and not until that time was the property to be sold and the proceeds divided among the children.

It is finally contended that the limitation over, and the estate sought to be conferred thereby, is void for remoteness, and created a perpetuity prohibited by law. This claim is not well founded. Three of the testator's children were living when the will was made; the other child was born prior to his death, and the fee to the proceeds of the property in question was to vest in them when the youngest child became of age. See Underhill on Wills, volume 2, sections 879, 884.

The judgment of the court below will be affirmed.

All the Justices concurring.