Argued December 8, 1908, decided January 12, rehearing denied April 20, 1909.

## NEAL *v.* DAVIS.

[99 Pac. 69; 100 Pac. 212.]

DESCENT AND DISTRIBUTION—PRETERMISSION OF CHILDREN—"HEIRS."

1. Under Section 5554, B. & C. Comp., providing that a testator who fails to name or provide for his child, shall be deemed to die intestate as to such child, a testator who dies leaving children, and by his will leaves all his property to his wife "to have and to hold the same during her natural life or to sell and convey the said property for the benefit of herself and her heirs." dies intestate so far as his children are concerned; the word "heirs" used in the will not being the equivalent of "children."

TENANCY IN COMMON—DOWER—TENANCY WITH HEIRS.

2. Section 2965, Hill's Ann. Laws 1892, providing that a widow entitled to dower may continue to occupy the lands of her husband with his heirs, or may receive a third part of the rents, issues, and profits thereof so long as the heirs do not object, without having the dower assigned, and Section 337, B. & C. Comp., giving the widow the right to bring an action in the nature of ejectment for the recovery of her dower before admeasurement if the heirs deny her right to dower, and Section 341 providing that, if an estate in dower has not been admeasured before the commencement of an action to recover the possession of real property by a tenant in dower, the plaintiff shall not have execution to deliver the possession thereof until the same be admeasured, do not affect the nature of the dower interest provided by Section 2954, Hill's Ann. Laws 1892, which is a life interest of one-third of the land of which her husband was seized at any time during marriage, and do not make the widow a tenant in common with the heirs.

DOWER — DOWER CONSUMMATE BEFORE ASSIGNMENT — ASSIGNABILITY OF INTEREST.

3. The dower interest of a widow while unassigned is a mere right of action, and she cannot convey to another any vested legal right in the land, or to the possession thereof, and a purchase of the widow's dower interest before assignment and an entry in possession of the lands by the purchaser is no defense to an action of ejectment brought against him by the heirs; the purchaser not being a tenant in common with the heirs or their grantees.

ADVERSE POSSESSION—BEGINNING OF ADVERSE POSSESSION.

4. Where a widow, acting under an invalid deed giving her all of the property of her husband, transfers real estate belonging to the estate, and the grantee immediately goes into possession of it, he enters under a claim of ownership of the fee, and not a claim of dower unassigned, and hence the heirs of the husband have a right of action against him from the time of his entry, and limitations will begin to run at the time of such entry.

ADVERSE POSSESSION—PLEADING—ISSUES AND PROOF—NATURE OF TITLE·

5. In an action to recover possession of real estate, where defendants plead title in fee in themselves which is denied by the reply, defendants are not to be confined to evidence of a paper title, but evidence of adverse possession of the property for the statutory period is admissible, as the averment of title in the defendants is sufficiently certain under Section 329, B. & C. Comp., requiring such an averment of title to be set out with a certainty required in the complaint to admit proof of title by adverse possession. Adverse possession of property for the statutory period constitutes a perfect title in the possessor, and becomes a vested right, as though evidenced by a written title.

PLEADING—JUDGMENT OF PLEADINGS—ADVERSE POSSESSION.

6. In an action by heirs to recover property transferred by the widow under an invalid will, judgment for defendants on the pleadings cannot be granted on the theory that the will was valid, or that title was acquired by adverse possession where such averment of title is denied in the reply, and plaintiffs' pleadings do not contain any admission of facts essential to vest the title by adverse possession; neither can such judgment be sustained on the theory of the running of limitations, for, if pleadings show that the statute has run, that fact would not invest defendants with title but would simply take from plaintiffs their remedy, and authorize a judgment of dismissal for costs.

DOWER—RIGHT BEFORE ASSIGNMENT.

7. Before assignment of dower there is no right to an undivided one-third, or to any particular part.

LIMITATION OF ACTIONS—ACCRUAL OF RIGHT OF ACTION—TITLE TO REAL PROPERTY.

8. Where testator left all his property by an invalid will to his wife, and she transferred the land in question to defendant, under a deed in fee simple, and he took possession of it, the right of action by the heirs to recover possession of the property is not postponed until the death of the widow, although the deed might have transferred the widow's unassigned right of dower, as before assignment the right of dower does not give any right to possession.

From Wasco: WILLIAM L. BRADSHAW, Judge.

Statement by MR. COMMISSIONER SLATER.

On June 21, 1881, in Wasco County, of this State, Jesse Neal died seised and possessed of the north ½ of the south ½ of section 26, township 2 north, range 10 east, Willamette Meridian, situate in that county. There survived him his widow, Lucy M. Neal, and four children, viz., Flora, who was then 21 years of age, Frank, 13, Oscar, 10, and Grace 7 years old. On October 17, 1880, Flora intermarried with H. W. Smith, and on May 27, 1893, she died intestate, leaving as her sole heir her husband, who is one of the plaintiffs herein. Jesse Neal left as his will the following instrument, executed by himself, with the attestation of two witnesses:

"Know all men by these presents; that I, Jesse Neal, being in my own right mind and by my own free will and accord, without fear or compulsion, do hereby will and bequeath all my property, both personal and real estate, to my beloved wife, Lucy M. Neal, to have and to hold the same during her natural life, or to sell and convey the said property for the benefit of herself and her heirs, and any and all indebtedness that may be against said estate."

On July 10, 1882, Lucy M. Neal, acting under the belief that she was the sole devisee of her husband, bargained and sold the said land for a consideration of $2,000, and attempted to convey to John W. Henrichs, one of the defendants, by a general warranty deed, a fee-simple title thereto. Henrichs entered into immediate possession of the whole of said land, and at the commencement of this action was in possession of the northwest ¼ of the southeast ¼ of section 26; but, after receiving his deed

from the widow, he conveyed to another the north ½ of the southwest ¼ of the section, and by mesne conveyances such title and right of possession such as Henrichs had become lodged in defendant Charles Davis, who was in possession thereof at the commencement of the action; and to another he conveyed the northeast ¼ of the southeast ¼, and the title to that became lodged in defendant Edward A. Cushman. Lucy M. Neal died July 17, 1900, and in February, 1906, Frank and Oscar Neal and their sister Grace (now Grace Rodgers), together with H. W. Smith, the surviving husband of Flora, jointly brought this action against Charles Davis, Edward A. Cushman, and John W. Henrichs to recover the possession of the said lands, alleging ownership in fee in themselves coupled with a right of immediate possession.

Only Davis and Henrichs appeared. They answered jointly, denying the material averments of the complaint, excepting that they admit the ownership and possession of the lands in dispute by Jesse Neal at the time of his death and the demise of the widow in July, 1900. They deny any joint possession or detention by themselves of the whole of the land; but Davis admits his possession of the west ½ of the tract, and avers that he is the owner in fee and entitled to the possession thereof, and disclaims any interest or right to the possession of the remainder of the land. Henrichs similarly pleads in respect to the northwest ¼ of the southeast ¼, with a like disclaimer by him to the remainder. For a second defense they plead the statute of limitations. As a third defense they plead the prior ownership of Jesse Neal and his death; that he left a will, stating its terms, and that it was regularly admitted to probate in July, 1881, Lucy M. Neal being appointed and having qualified as executrix thereof; that she elected to take under the will; and that acting under the authority thereby conferred, and for the sum of

$2,000 to her paid, she sold and conveyed the land to John W. Henrichs, who went into the immediate possession thereof, and has ever since held and still holds possession of the northwest ¼ of the southeast ¼; that by sundry mesne conveyances from Henrichs, defendant Davis has succeeded to and come into possession of the west ½ of the tract; that the sum received by Mrs. Neal for the sale of the land has been used in the payment of the debts of the estate and for the benefit of the children of the testator, for which reason, it is claimed, plaintiffs ought now to be estopped from showing or attempting to show that the writing purporting to be the will of Jesse Neal was not a valid will.

By their reply plaintiffs deny the new matter of the answer, excepting that they admit the execution of the will, which they claim is void as to them, because of the alleged fact that none of the testator's children were named or provided for therein. They further plead the execution and delivery by Lucy M. Neal of the deed purporting to convey the land to Henrichs, that such deed was recorded, and that Henrichs went into possession of the land under the deed, but they deny that he has ever since held possession of the premises in dispute. For a further and separate reply to the entire answer, plaintiffs plead their relationship to Jesse Neal, his ownership of the property at the time of his death, the will, by copy, the ages of the children at the death of their father, the invalidity of the will, that the only right, title, or interest Lucy M. Neal had in the property was a dower interest, or the use during her natural life of one-third part thereof, the making of her deed to Henrichs, who, it is averred, took thereby only the life estate of the grantor, in and to an undivided one-third thereof, and the death of Lucy M. Neal on July 17, 1900. A general demurrer interposed by defendants to this reply was sustained by the court. Thereupon defendants moved for a judgment on the pleadings in their favor,

and the plaintiffs offered a similar motion in behalf of themselves. The former was sustained and the latter denied. Whereupon judgment was entered to the effect that Davis was the owner in fee simple of the north $\frac{1}{2}$ of the southwest $\frac{1}{4}$; that Henrichs was the owner to the same extent of the northwest $\frac{1}{4}$ of the southeast $\frac{1}{4}$ of the section, and that plaintiffs had no interest therein. From this judgment, plaintiffs have appealed.

REVERSED.

For appellants there was a brief over the names of *Messrs. Wilson & Neal,* with oral arguments by *Mr. Oscar A. Neal* and *Mr. Henry H. Northup.*

For respondents there was a brief over the names of *Mr. John L. Henderson, Mr. William H. Wilson,* and *Mr. Andrew A. Jayne,* with an oral argument by *Mr. Wilson.*

Opinion by MR. COMMISSIONER SLATER.

1. Two principal questions are involved in the consideration of the demurrer to the further and separate reply, viz.: (1) The validity and effect of the will; and (2) the effect of the deed from Lucy M. Neal to Henrichs. Upon the first question, we have no doubt that the will is void as to the children of Jesse Neal, and that as to them there was no will. None of the four children of Jesse Neal are mentioned or referred to in his will, either particularly or generally, as a class, nor is there any provision made for them either specifically or generally. If this is true, then, by the force of the statute (Section 5554, B. & C. Comp.) as interpreted and construed by this court (*Gerrish* v. *Gerrish,* 8 Or. 351: 34 Am. Rep. 585; *Northrop* v. *Marquam,* 16 Or. 173, 186: 18 Pac. 449; *Worley* v. *Taylor,* 21 Or. 589: 28 Pac. 903: 28 Am. St. Rep. 771), the above conclusion must inevitably follow. The only reference, direct or remote, made therein to any beneficiary, other than Lucy M. Neal, is in these words "for the benefit of herself and heirs." But counsel for defendants strenuously urge that the

words "her heirs" as there used should be read to mean "her heirs. apparent," or "her children," and from this premise, assuming as a fact that "her children" were also "his children" they arrive at the desideratum, that the children of the testator are referred to, and a provision made for them as a class. A number of authorities are cited to support this contention, some of which are the following: 2 Underhill, Wills, § 616; *Bond's Appeal,* 31 Conn. 183; *Coleman* v. *Coleman,* 69 Kan. 39 (76 Pac. 439) ; *Hochstein* v. *Berghauser,* 123 Cal. 681 (56 Pac. 547) ; *Bunting* v. *Speak,* 41 Kan. 424 (21 Pac. 288: 3 L. R. A. 690). But none of them are in point here. An examination of them will show that the interpretation of the word "heirs" to mean "children" was enforced in each case cited, because some qualifying word or some other provision of the instrument under consideration disclosed that the word "heirs," as used, was intended to mean "children," and the intent of the maker when disclosed on the face of the instrument must control. But, when unexplained and uncontrolled by the context, the word "heirs," like all other legal terms, is to be given its technical import, in which sense it designates the persons who could by statute succeed to the real estate in case of intestacy. *Hochstein* v. *Berghauser,* 123 Cal. 681 (56 Pac. 547). The case of *Bowman* v. *Bowman,* 49 Fed. 330 (1 C. C. A. 274), is much in point here. A provision in Bowman's will read:

"I give, bequeath and devise to each of my heirs at law the sum of one dollar."

The contention was that the term "heirs at law" includes the children of the testator, and that it therefore necessarily follows that the children were not overlooked or forgotten. In the course of the opinion Mr. Justice HAWLEY says: " The words 'heirs at law' may, it is true, be read to mean 'children,' and should always be so construed if the context distinctly shows that the words were employed in that sense by the testator. The

term 'heirs at law,' however, in its general definition, includes many others. It is not limited to children. It may be used, and is often used, in cases where there are no children. It includes parents, brothers, sisters, etc. Who can tell by reading this will what particular heirs were in the mind of the testator at the time he signed the will? Does it clearly appear that it was his intention to provide for his children? Is it manifest upon the face of the will that his children were not overlooked or forgotten? Certainly not." The test there used may be employed in this case, and the same answer must necessarily be returned to the inquiry. To the same effect is *Bower* v. *Bower,* 5 Wash. 225 (31 Pac. 598). But, if it were conceded that the word "heirs" in this case ought to be read "children," yet that does not solve the matter in favor of the validity of the will, for it would still read "her children," and not "my children." These two classes are not necessarily identical, and, before they could be made so to appear, the fact would necessarily have to be alleged and then established by parol proof. But under the authorities this cannot be done. "Where children are not named, the presumption is that they were unintentionally omitted, and while this presumption may be rebutted, where the tenor of the will, or any part of it, indicates that they were not forgotten, yet it cannot be made to appear by parol evidence, but it must appear on the face of the will that the testator remembered them, and, where they are neither expressly named, nor alluded to as to show affirmatively that they were in the testator's mind, such presumption becomes conclusive." *Thomas* v. *Black,* 113 Mo. 66, 69 (20 S. W. 657).

2. The conclusion that the will is void having been reached, it follows that the fee-simple title to the land devolved upon the four children of Jesse Neal, subject to such interest or claim as the law cast upon the widow as her dower, which at that time was the use during

her natural life of one-third part of all the lands of which her husband was seised of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof. Section 2954, Hill's Ann. Laws 1892. This much is conceded by plaintiffs by direct averment in their reply, to which there is added an allegation of a conclusion of law as to the effect of the deed, as follows:

"That the said deed conveyed to said John W. Henrichs the dower interest of said Lucy M. Neal and no other or greater estate in the said premises."

From this it is argued that during the life of Mrs. Neal, Henrichs was lawfully entitled to the possession, use, and enjoyment of one-third of the lands, the fee-simple title to which had descended from the father, Jesse Neal, to his children; that, the dower interest not having been assigned, he was entitled to have such use, enjoyment, and possession jointly with them, and thereby they became tenants in common with him; and that this prevented the running of the statute against them until the termination of the particular estate which did not occur until July 17, 1900. Hence they conclude that the further and separate reply to which defendants' demurrer is directed avoids the plea of the statute of limitations, and is a bar to the claim of a fee-simple title set up by defendants in their answer. Both of these conclusions, however, are erroneous, as we shall endeavor to show.

It is true the deed of Lucy M. Neal is sufficient in form to convey to Henrichs whatever vested estate or interest, if any, she possessed in the lands at the time of its execution, but the real inquiry is what was the nature of her interest, if any, and was it vested. All she had, or that is claimed by plaintiffs that she had, was a claim of dower unassigned. But at common law, "although the widow's dower has become consummate by the death of the husband, it is not, previous to an

assignment thereof, an estate or freehold in the lands of her deceased husband, but it is a mere right or chose in action, and she is not entitled before assignment to enter upon the lands without the consent of the heir, or to bring ejectment therefor." 10 Am. & Eng. Enc. Law (2 ed.) 146; 14 Cyc. 964. By Section 2965, Hill's Ann. Laws 1892:

"When a widow is entitled to dower in the lands of which her husband died seised, she may continue to occupy the same, with the children or other heirs of the deceased, or may receive one-third part of the rents, issues, and profits thereof, so long as the heirs or others interested do not object, without having the dower assigned."

This statute, however, does not effect any change in the nature of her right so as to make her a tenant in common with the heirs. The fact that the widow may occupy the lands subject to her claim of dower without having it assigned, if the heirs do not object, does not change the essential nature of her rights. *McMahon* v. *Gray,* 150 Mass. 289 (22 N. E. 923: 5 L. R. A. 748: 15 Am. St. Rep. 202). Such possession is at the will or sufferance of the heir, and not by right. If the heirs deny the widow's right to dower or do some act amounting to such denial, she may bring an action in the nature of ejectment for the recovery of her dower before admeasurement, as provided by Section 337, B. & C. Comp., but by Section 341, B. & C. Comp.:

"In an action to recover the possession of real property by a tenant in dower, or his successor in interest, if such estate in dower has not been admeasured before the commencement of the action, the plaintiff shall not have execution to deliver the possession thereof until the same be admeasured."

These provisions of the statute adverted to relate only to the form or mode of proceeding, and do not alter or modify the interest of the widow, nor make her a tenant in common with the heirs. 7 Pl. & Pr. 284; 2 Scribner,

Dower (2 ed.) 34; *Oothout* v. *Ledings,* 15 Wend. (N. Y.) 410; *Yates* v. *Paddock,* 10 Wend. (N. Y.) 529; *Pringle* v. *Gaw,* 5 Serg. & R. (Pa.) 536. The effect of the former provision of the statute is to provide a remedy to adjudicate the right to dower, as a substitute for the common-law writ of dower *unde nihil habet,* which was a legal remedy to enforce an assignment of dower, and to recover damages for the detention thereof. It was not a possessory action, but, after the dower was assigned, the widow could recover possession by ejectment. 7 Pl. & Pr. 158. The effect of the latter is to limit the remedy to the mere determination of the right, and to exclude the right of entry before admeasurement of the dower.

3. The dower interest of a widow while unassigned is a mere right of action (*Baer* v. *Ballingall,* 37 Or. 416: 61 Pac. 852; *Aiken* v. *Aiken,* 12 Or. 203: 6 Pac. 682; *Leonard* v. *Grant,* 8 Or. 276), and:

"The entry of the wife, upon her husband's death, without an assignment, is by the books treated as an abatement; and a doweress in, under a void assignment, may be regarded as a disseisor. Until assignment, a title of dower affords no impediment to the validity of a recovery; nor is it to be considered for any other purpose as an outstanding estate of freehold. And, according to the strict rule of the common law, a judgment for dower will not of itself invest the widow with the freehold. An actual entry, after assignment or a delivery of seisin by the sheriff, is necessary to effect this result." 2 Scribner, Dower, § 27.

Thus in *Sheafe* v. *O'Neil,* 9 Mass. 13, the proceedings were entered against the defendant as a disseisor. She pleaded in bar as to one undivided third part of the demanded premises, that her late husband during their coverture was seised in fee of the demanded premises; that she had never parted with her right of dower therein, and, upon the death of her husband, she entered into the undivided third part of the lands as tenant in dower, and still possessed the same. As to the other

two-thirds, she entered a disclaimer. But the court held that a tenant in dower was not seised of an undivided third part, and that she could not avoid a recovery unless her dower had been legally assigned. In *Evans* v. *Webb,* 1 Yeates (Pa.) 424 (1 Am. Dec. 308), a disseisee was allowed to recover in ejectment against the widow without previously assigning her dower.

"'A distinction was contended for by the defendant's counsel,' the court remarked in deciding the case, 'that, though the widow could not justify her entry against the heir or devisee, yet such. heir or devisee could not recover against her, when in possession, as defendant in ejectment. We can see no ground whatever for the distinction; for, if she could hold adverse to the heir or devisee, without an assignment of dower, she could also maintain an ejectment to recover possession.' So, if the widow tarry in the chief house of her husband after the expiration of her quarantine, proceedings in ejectment may be brought against her by the heir or by any person claiming title under him. Her only remedy in such case is to proceed for an assignment of her dower." 2 Scribner, 32; 4 Kent, 61; *Jackson* v. *O'Donaghy,* 7 Johns (N. Y.) 247; *McCulley* v. *Smith,* 2 Bailey (S. C.) 103; *Collins* v. *Warren,* 29 Mo. 236. Such being the rights of the widow before assignment of her dower, she could not convey to another any vested legal right in the land or to the possession thereof, and therefore a purchase of the widow's dower interest before assignment, and an entry and possession of the lands by the purchaser, is no defense to an action of ejectment brought against him by the heirs. 14 Cyc. 965; 10 Am. & Eng. Enc. Law (2 ed.) 147; *Wallace* v. *Hall's Heirs,* 19 Ala. 367); *Pidcock* v. *Buffam,* 61 Mo. 370; *Carnall* v. *Wilson,* 21 Ark. 62 (76 Am. Dec. 351); *Barnett* v. *Meacham,* 62 Ark. 313 (35 S. W. 533); *Howe* v. *McGivern,* 25 Wis. 525; *McCammon* v. *Detroit R. Co.,* 66 Mich. 442 (33 N. W. 728); *King* v. *Merritt,* 67 Mich. 194 (34 N. W.

689) ; *Moore* v. *Gilliam,* 5 Munf. (Va.) 346. Plaintiffs, therefore, never were tenants in common with Henrichs or his grantees.

4. But he entered under a claim of ownership of the fee, and not under a claim of a dower unassigned. Hence from the time of his entry, plaintiffs had a right of action against him and those claiming under him to recover the possession of the whole of the premises now in dispute. And they can now maintain this action unless barred by the statute of limitations, which issue is thus presented. The affirmative matter added as a separate reply is not a bar to such defense.

5. The defendants have also pleaded title in fee in themselves which is also denied by the reply. But to prove such averment defendants are not to be confined to evidence of a paper title, or to a title derived through the deed from Mrs. Neal, as apparently it has been assumed by counsel, but evidence on their part of adverse possession of the property for the statutory period extinguishes adverse titles and ripens into a perfect title in the possessor, and becomes a vested right as though evidenced by a written title (*Parker* v. *Metzger,* 12 Or. 407: 7 Pac. 518; *Joy* v. *Stump,* 14 Or. 361: 12 Pac. 929; *Mitchell* v. *Campbell,* 19 Or. 198: 24 Pac. 455; *Gardner* v. *Wright,* 49 Or. 609: 91 Pac. 286), and entitles the possessor of all the remedies incident to the recovery and maintenance of possession under written titles (*Barrell* v. *Title Guarantee Co.,* 27 Or. 80: 39 Pac. 992). The averment of title in the defendants to the land in controversy is sufficiently certain and particular as to its nature and duration to meet the requirements of Section 329, B. & C. Comp., and to admit proof of title by evidence of adverse possession for the statutory period. *Mitchell* v. *Campbell,* 19 Or. 198 (24 Pac. 455) ; *Witherell* v. *Wiberg,* 4 Sawy. 234 (Fed. Cas. No. 17,917).

6. The reply, therefore, containing affirmative matter to the effect that defendants acquired no title through a

particular source as a deed, does not preclude them from proof of a title acquired by an adverse possession, and there was no error in sustaining the demurrer. In allowing defendants' motion for a judgment on the pleadings, the court was evidently of the opinion that the will was valid, and that Henrichs' deed from Mrs. Neal invested him with the full title to the land, for the terms of the judgment are that each of the defendants is the owner in fee of the respective portion of the original tract claimed by him. We have held, however, that the will is void, and that Henrichs acquired no vested interest in the land under his deed, and therefore the judgment is erroneous unless it can be supported upon some other theory. It cannot be sustained upon the claim of a title acquired by adverse possession, because the averment of title is denied, and the pleadings on the part of plaintiffs do not contain any admission of the facts essential to vest a title under a claim of ownership by adverse possession for the statutory period. It is alleged in the answer that Henrichs went into possession immediately on the execution of the deed by Mrs. Neal, and has ever since held, and still holds, possession of a particular 40-acre tract thereof. The entry of Henrichs is admitted by the reply, but the remainder of the allegation is denied.

Neither can the judgment be sustained upon the theory of the running of the statute; for, if the pleadings showed that the statute had run, that fact would not invest defendants with the title which has been adjudged to them, but would take away from plaintiffs only the remedy and at the utmost would authorize a judgment of dismissal of the action or judgment for costs (*Hoover* v. *King*, 43 Or. 281: 72 Pac. 880: 65 L. R. A. 790: 99 Am. St. Rep. 754); but we have called attention to the fact that the plea of the statute of limitations is denied by the reply, and there are no facts elsewhere admitted therein which could be held to show that the plaintiffs or their predecessors were not seised or possessed of the

premises within 10 years before the commencement of the action, and that such denial is in fact not true.

Under this state of the record, it appears that it is necessary to reverse the judgment and remand the cause for a new trial, so that these issues may be determined by a jury.                                        REVERSED.

Decided April 20, 1909.

## ON PETITION FOR REHEARING.

[101 Pac. 212.]

MR. JUSTICE SLATER delivered the opinion of the court.

7. It is now urged by plaintiffs that, because the deed from Mrs. Neal to Henrichs might operate to transfer to the latter her unassigned right of dower, and the right to have it assigned in his name, and because he might have availed himself of that right at any time before the death of the widow, which occurred in July, 1900, he for that reason possessed an equitable defense to any action of ejectment that might have been brought against him by the heirs, and by means of that defense he could have successfully maintained his possession to the extent of one-third of the land, and hence the right of action in the heirs would be of no avail to them, and the statute would not begin to run as to such one-third until the date of the death of Mrs. Neal. But before assignment of dower there is no right to an undivided one-third, or to any particular part.

8. We held in the main opinion that the deed vested in Henrichs no right in the land, or to the possession of any part thereof, although it may have been sufficient to transfer to him her unassigned right of dower, and from this we drew the conclusion that in taking possession of the land Henrichs would not thereby become a tenant in common with the heirs, so as to prevent the statute from running for that reason.

But Henrichs entered under a deed purporting on its face to convey the whole title to him, and warranting

and covenanting that the grantor had a good right and lawful authority to sell the land, and forever warranting the title so intended to be conveyed against all lawful claims of all persons, and by reason thereof he claimed the fee-simple title to all of the land, coupled with the right of possession, adversely to the heirs, upon whom the title and right of possession had been cast by the law. This amounted to a disseisin in fact, whereby the heirs were divested of their seisin, and of all right in relation thereto, except their right of entry and of property, or of action for its recovery. 2 Wood, Lim. 618. At all times since then the heirs have had a right of action, not only to recover that possession, but to establish their title; and it is immaterial what Henrichs may have been able to accomplish in a court of equity upon a claim he has never asserted, has not pleaded, and never relied upon.

The motion is therefore denied.

REVERSED: REHEARING DENIED.