Argued October 30, affirmed as modified November 30, 1972

# FERGUSON, *Appellant, v.* VANCE, *Respondent.*
### 503 P2d 706

*Joseph Larkin,* Redmond, argued the cause and filed a brief for appellant.

*Charles R. Marsh,* Bend, argued the cause and filed a brief for respondent.

McALLISTER, J.

The plaintiff filed this proceeding asking for a declaration of the respective rights of the parties to a parcel of real property in Bend and for general equitable relief. The court decreed that the plaintiff was the owner of the property subject to a lien in favor of defendant Dymple Ferguson Vance. Plaintiff appealed from that portion of the decree which gave defendant a lien on the property.

The controlling facts are not in dispute. R. A. Ferguson, plaintiff's father, died intestate on September 26, 1960, survived by his widow Dymple Ferguson, hereinafter referred to as the defendant,[1] and two adult sons by a prior marriage, his only heirs at law. Defendant was appointed administratrix of her husband's estate. At his death Ferguson was the owner of the property involved in this suit, a dilapidated house, which had been rented intermittently.

Defendant, apparently under the mistaken belief that upon Ferguson's death she became the owner of this property by right of survivorship, did not include the property as an asset of the estate, although it was

---

[1] The trial court decreed that the other defendant, First National Bank of Oregon, had no interest in the property. The bank has not appealed, and we need not discuss that aspect of the case.

listed in the inventory for tax purposes. Shortly after Ferguson's death defendant decided to move into this house, but before doing so had it extensively repaired so as to make it livable. Plaintiff and his brother knew of her plans and of the repairs and did not object.

Ferguson's estate was closed on April 3, 1963. Shortly thereafter the heirs discovered that they owned the property and their attorney discussed the status of the property a number of times with defendant's attorney. From that time defendant was aware that there was a question about her title to the property, but neither she nor the heirs took any formal steps to resolve the problem. Defendant, who had remarried, continued to occupy the premises with her husband and made further improvements to the property.

In October, 1970, plaintiff, who had in the meantime acquired his brother's share in the property, made a formal demand upon defendant for possession. On December 31, 1970, he filed this suit.

Defendant, in her answer, claimed title by adverse possession and also on the ground that plaintiff was estopped to assert his claim. In the alternative defendant asked that, if the court should decree that plaintiff owned the property, she be given a lien thereon for mortgage payments, taxes, and the value of the improvements she had made while in possession.

The trial court held that defendant's claims based on adverse possession and estoppel were not supported by the evidence. The court decreed that plaintiff owned the property and held that defendant was entitled to recover the taxes she had paid and the amount expended in retiring the mortgage which had encumbered the property at the time of Ferguson's death. The trial court denied defendant's claim for the

value of the improvements she had made to the property. The court also held that plaintiff could not have a set-off for rental while defendant was in possession because the evidence was not sufficient to enable the court to fix the amount of such rental. The decree ordered the land sold and the proceeds used to reimburse defendant for the taxes and the mortgage payments with any surplus to go to the plaintiff.

On oral argument plaintiff conceded that defendant was entitled to the amount of the taxes and the encumbrance paid by her and limited his appeal to whether he was entitled to offset against the amount due defendant a reasonable rental for the premises while she was in possession. We do not reach the question of whether there was sufficient proof of the reasonable rental value of the premises prior to October 1970. We hold that under the circumstances of this case defendant is not liable to plaintiff for rent while she occupied the premises prior to plaintiff's demand for possession.

Defendant never attempted to have dower assigned in this property and does not challenge plaintiff's contention that her right to do so became barred by ORS 112.695 (formerly ORS 113.090) in September 1970 shortly before this suit was filed.[2]

We think this case is controlled by ORS 113.250 (repealed OL 1969, ch 591, § 305):

"When a widow is entitled to dower in the land of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or may receive one-half part of the

---

[2] Defendant claimed a homestead in the property in which she and Ferguson were living at the time of his death and her homestead right under ORS 118.070(1)(g) is not involved in this proceeding.

rents, issues and profits thereof, so long as the heirs or others interested do not object, without having the dower assigned."

Defendant's occupancy was within the terms of the above statute authorizing the widow to occupy land owned by her husband at his death "so long as the heirs or others interested do not object."[9] Although the heirs knew that they owned the property and denied defendant's claim to title, they did not object to her occupation of the premises until October 20, 1970, when plaintiff made a formal demand for possession.

By its terms, however, ORS 113.250 permitted occupancy "with the children or other heirs of the deceased." There was no such joint occupancy here. This court has never had occasion to pass on the right of the widow to occupy the property alone. The statute was considered in *Neal v. Davis*, 53 Or 423, 99 P 69, 101 P 212 (1909). In that case a widow, erroneously believing herself to be the owner, sold certain property which her husband had owned at the time of his death. Twenty-five years later, and six years after the death of the widow, the children sought to recover the property from the widow's grantee and his successors. They argued that they were not barred by the statute of limitations because the widow's deed had conveyed her

---

[9] Although ORS 113.250 was repealed by the 1969 Legislature, effective July 1, 1970, ORS 112.685, enacted that same year, provides:

"Dower and curtesy, including inchoate dower and curtesy, are abolished, but any right to or estate of dower or curtesy of the surviving spouse of any person who died before July 1, 1970, shall continue and be governed by the law in effect immediately before that date."

As defendant's rights under ORS 113.250 were a statutory enlargement of her dower rights, they were not terminated by the repeal of that statute after her husband's death, but were continued in effect under the terms of ORS 112.685.

dower interest and that, because dower was never assigned, the purchaser was a joint tenant with the children until the widow's death. They argued, therefore, that they had no cause of action until the life estate expired upon the death of the widow. The court rejected this argument, holding that because the right of dower before assignment is a mere "right of action," the widow's deed conveyed no right of possession. The children could have brought an action of ejectment at any time during the widow's life. Discussing the statute, the court said:

> "This statute, however, does not effect any change in the nature of her right so as to make her a tenant in common with the heirs. The fact that the widow may occupy the lands subject to her claim of dower without having it assigned, if the heirs do not object, does not change the essential nature of her rights. * * * Such possession is at the will or sufferance of the heir, and not by right. * * *" 53 Or at 432.

Under an identical statute the Michigan court has held that the widow's occupation need not be with the children. In *Zoellner v. Zoellner,* 53 Mich 620, 19 NW 556 (1884), after the death of her husband, the widow continued to occupy the property with his children, her stepchildren. After about six months the children were removed by their guardian, and the widow remained in possession alone. The court held that under the statute the widow had a right to occupy the premises "until some steps were taken to assign her dower or to partition the estate," and that the removal of the children did not affect that right. 19 NW at 559.

The Michigan court has also held that when the widow occupies her deceased husband's property under

authority of the statute she does not owe the heirs any rental on account of that occupancy. *Graff v. Graff,* 123 Mich 456, 82 NW 248, 250 (1900). In that case the children remained on the property with the widow as long as they wished, and when the children had all left home the widow remained in possession alone.

We agree with the Michigan court that ORS 113.250 did not limit the right of the widow to occupy the premises only "with the children or other heirs of the deceased." If, as in this case, the heirs chose not to occupy the premises with the widow she could occupy the premises alone "so long as the heirs or others interested do not object."

From the beginning of defendant's occupancy the heirs could have ousted her from the premises by a simple objection or demand that she vacate. If they had done so, she could have taken steps to have her dower assigned. As a practical matter they could have imposed conditions on her continued occupancy, such as the payment of a reasonable rental. Instead, they chose, for reasons not clearly apparent from the record, to demand neither that she vacate nor that she pay any rental. Having, in effect, consented to defendant's occupation of the premises until October 20, 1970, plaintiff has no right to require defendant to pay rental prior to that date. To require the payment of rental retrospectively prior to October 1970 would constitute an *ex post facto* imposition of conditions on the widow's occupancy under ORS 113.250 which were not imposed when the statute was enacted in 1854.

Since defendant did not vacate the premises in response to plaintiff's demand, she is liable for rent from that demand until she vacates. There is competent, uncontradicted evidence that the reasonable rental

value of the premises at the time of trial in April 1971 was $125 per month. The case is remanded with instructions to modify the decree by offsetting against defendant's lien rental for the premises at the rate of $125 per month from October 20, 1970, until defendant vacates the premises, together with interest on the rental from the due date of each instalment.

Affirmed as modified. Neither party shall recover costs in this court.