MARTHA. OVERLY *et al., Appellants,* v. DAVID ANGEL *et al., Appellees.*

No. 16,881.

SYLLABUS BY THE COURT.

CONTRACTS—*Creation of a Trust by Will—Proof.*  Plaintiffs, who claimed to be the equitable owners of an estate, alleged and undertook to show that their uncle entered into an agreement with his wife that he would execute a will giving all his property to her on condition that she would in turn leave the property to plaintiffs; that he had made the will in compliance with this agreement and had fastened a trust upon the property in favor of plaintiffs, but that the wife had failed to carry out the agreement on her part and had died without making a will.  To sustain their contention it was necessary for plaintiffs to show by clear and convincing proof that the agreement was made and a trust created in their favor.  The trial court found against their contention, and under all the testimony it is held that the finding must be approved.

Appeal from Lyon district court.    Opinion filed March 11, 1911.   Affirmed.

*L. B. Kellogg, John Madden,* and *C. M. Kellogg,* for the appellants.

*W. L. Huggins, H. E. Ganse,* and *Humbert Riddle,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:  The appellants, Martha Overly and Sarah E. Overly, asked the trial court to adjudge them to be the equitable owners of the estate left by Martha.

B. Smith at her death, and to put them into possession of it.

It appears that William B. Smith and his wife, Martha B. Smith, resided in Illinois, and that he died testate in 1885, leaving all his property to his wife. She sold her property in Illinois and moved to Kansas, where she remained until her death, in 1909. By good business management she had increased the value of her estate, making it double what it was when her husband died. After she died a search for a will was made; but none was found, and upon application an administrator of her estate was appointed and proceedings for the distribution of the estate as the law provides was begun. Subsequently a carpet was taken up in the house she occupied, and it is claimed that among old newspapers, which had been placed under the carpet, the following paper was found:

"Mrs. Buck.

"Mrs. Buck and I went to Virginia and I see our property is all given to me—and at my death I want my brother david angel to have two thousand dollars and my sister mary Wenger to have two thousand dollars and one hundred dollars for any of the relation that claims it and all the rest of my property and money I want Mattie Overly and Lizzie Overly to have at my death equally. Mr. and Mrs. Driver and Mrs. Buck know that I want it to go that way.

her<br>
MARTHA B. ✕ SMITH."<br>
mark

The appellants were the daughters of a brother of Martha B. Smith, who had died when the children were young. William B. Smith and his wife gave them a home for a time and sent them to school. Afterward they married and established homes of their own, and so far as appears they sustained friendly relations with their aunt, Mrs. Smith. The appellants alleged and undertook to prove that William B. Smith entered into an agreement with his wife that he would execute a

will giving all his property to her, on condition that she should devise and bequeath all the property to appellants, except such provisions as she should see fit to make for their mother and her brother. It was also alleged that William B. Smith carried out his part of the agreement, and that Martha B. Smith was endeavoring to comply with the agreement when she signed the paper above quoted and supposed it to be a good will.

There was considerable testimony offered in regard to whether there was such an agreement between the Smiths as to the disposition of their property, whether there had been part performance of it, and finally whether the Smiths intended by their agreement and acts ultimately to vest the property in appellants. It is true, as appellants contend, that it was competent for the Smiths to make a binding contract for the disposition of their property and to fasten a trust upon it in favor of appellants. In *Anderson v. Anderson,* 75 Kan. 117, it was said:

"When a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on account of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable." (p. 123.)

The trial court, which heard the evidence and had a decided advantage over this court in measuring its force, has in effect found that no such agreement was made or trust created. There was some testimony that William B. Smith was attached to appellants and had expressed a desire that the property should ultimately be given to them. It was testified that in the last sickness of Smith he told a witness that he had willed all his property to his wife and that he wanted a part of it to go to appellants, and that he said to his wife, "If I don't live to get it done you'll do as I want you?" and she

said, "Yes, dear, I will." The same witness testified at another time and gave a different version, saying in substance that Mr. Smith stated that he had willed everything to his wife to do as she pleased with it, but that if anything was left he wanted it to go to appellants; that he desired to make a codicil to his will, and if he did not get it done he wanted his wife to remember his wish, and that she said she would remember; that he had sent for a certain man to prepare a codicil, but that he was not found until after Smith became unconscious, and the will was therefore not changed. There were inconsistencies and contradictions in the testimony of this witness, as well as that of his wife, due in part to the fact that they were old and were attempting to repeat statements made twenty-five years before their testimony was given. There was an attempt to show that Mrs. Smith recognized an agreement to give the property to appellants, and witnesses did testify that she had said that provision had been or would be made by which appellants would get a part of her property, but it was of a vague and uncertain character. The paper which it was said was found in the trash under a tacked-down carpet lacked the essential features of a will, and, besides, there was no satisfactory evidence that it was signed by Mrs. Smith or even that she had ever seen it. The contention is, not that this paper is a will, but rather that it is some evidence of an agreement with her husband to give the property to appellants and of an intention to carry out that agreement. The character of the paper and the circumstances under which it was found leave its origin, genuineness and purpose in great doubt, and it adds little, if anything, to the proof of the alleged agreement between the Smiths, the existence of which must be clearly and certainly established before it can be said that Mrs. Smith took and held the property impressed with a trust in favor of appellants. The will of William B. Smith gave the property absolutely to his wife,

and while witnesses said that he desired to change the will and desired to add a codicil, no change or addition was in fact made. The statement of the Smiths offered as proof of an agreement that the property should go to appellants was not made in connection with the execution of the will, but some time after it had been executed. It therefore could not have had any influence on the making of the will. The attempt to have a codicil added to the will, if made, would tend to show that no agreement had been made as to the disposition of his property, or at least was not relied on, by Mr. Smith. There is nothing to show that Mrs. Smith did anything to induce her husband to make the will, nor to prevent him from changing the will which had been executed. It does not appear that any promise was made by her that if the property was left to her she would carry out any wish or direction of his. No proof is offered of anything approaching fraud on the part of Mrs. Smith in the making of the will.

The ordinary rule is that, where an estate is absolutely devised, any repugnant conditions in the will must yield (*McNutt v. McComb*, 61 Kan. 25), but in the will of Smith there were no restrictions and no requests, precatory or otherwise. The conversation said to have occurred shortly before his death is hardly such as would create a trust or operate to cut down an unequivocal disposition of property. Whether considered with or apart from the will, the words used appear to be advisory in their nature and not such as evidenced a purpose to engraft any conditions upon the will, and they certainly lack the elements necessary to the creation of a trust.

The judgment of the district court is affirmed.