No. 18,743.

FREDERICK KOENIG et al., *Appellees and Cross-appellants*, v. EDWARD KOENIG et al., *Appellants and Cross-appellees*, and NICHOLAS KOENIG et al., *Appellees*.

SYLLABUS BY THE COURT.

1. WILL—*Written Release by Beneficiaries Valid and Binding.* In an action involving the construction of a will it was admitted that two stepchildren of the testator who were specifically named in one item of the will as beneficiaries had each been paid $200 by the executors and had signed a release in the following form:

"$200.00.                 AUGUSTA, KANS., May 31, 1910.
"Received of Edward Koenig, Albert Koenig, executors of the estate of Frederick Koenig, Two Hundred Dollars in full payment of my distributive share of the estate of Frederick Koenig in consideration of which we hereby release all claim under the will of the said Frederick Koenig."

In their answers they alleged that the releases were obtained by fraud and misrepresentation, but no attempt was made at the trial to prove that they were not fairly and freely executed. The court held as a matter of law that they were void under the statute of frauds for the failure to name any grantee or to describe real estate. *Held*, that it is not essential to the validity of such an instrument that it mention the name of a grantee or describe real estate, and the releases in question having been fairly and freely entered into are binding upon the beneficiaries.

2. WILL—*Construction—Intent of Testator.* In this case, construing the will in its entirety, it is held that it was the intention of the testator to consider all his property as money and to divide it into two portions; the first, of $3500, if there was so much left, to be divided equally among the persons named in the first clause or item of the will referred to therein as his children, although one was a stepchild and one a granddaughter. The second item is regarded as referring to the residue of the estate, the disposition of which is controlled by the provisions of items first and second, the same as though the third item had been omitted from the will, the only persons mentioned in the third item having released all claims under the will.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed July 7, 1914. Modified.

*N. A. Yeager,* of Augusta, for Frederick Koenig *et al.*

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for Edward Koenig *et al.*

*S. W. Shattuck, jr.,* of Wichita, for Nicholas Koenig *et al.*

The opinion of the court was delivered by

PORTER, J.: This action involves the construction of the will of Frederick Koenig, a resident of Wichita, who died on the 6th of April, 1910.

The testator was married twice. His first wife was the widow of his brother. When he married her she had three children, Nicholas Koenig, a son, Elizabeth Kassel (*neé* Koenig), a daughter, Mary Newman (*neé* Koenig), a daughter, all of whom are living. To the testator and his first wife, widow of his brother, there were born seven children; Edward Koenig, Frederick Koenig, Christina Lanterman (*neé* Koenig), Roseina Morehouse (*neé* Koenig), Emma Prigmore (*neé* Koenig), Adolph Koenig, and Susie Flynt (*neé* Koenig), deceased, who left a daughter, Bulah Flynt, surviving her.

The first wife died and the testator married another widow by the name of Myers. By this wife he had two children, Albert Koenig and Henry Koenig, and she had five children by a former husband: Louisa Tool (*neé* Myers), John Myers, Charles Myers, A. F. Myers and Carrie McBride (*neé* Myers).

Thus the testator at his death left surviving three groups of children and stepchildren: First, three stepchildren, children of his first wife; second, seven children of his own by his first wife, and a granddaughter, child of a deceased daughter; third, two children of his own by his second wife, and five stepchildren, children of hers.

Koenig v. Koenig.

After revoking all other wills the will reads as follows, omitting the parts about which there is no controversy:

"As to my worldly estate and all the property of which I shall die seized and possessed, or to which I shall be entitled, at the time of my decease whether real, personal or mixed, in my name, I devise, bequeath and dispose thereof in the manner following, to-wit:

*Imprimis.*

"My will is that all my just debts and doctor bills if any, and funeral charges shall by my executor hereinafter named, be paid out of my estate as soon after my decease as shall by him (them) be found convenient.

"Item 1st.

"To my beloved children I give and bequeath, in equal shares to each share and share alike, if there is so much left, after my death. I give and will, Thirty Five Hundred Dollars, ($3500.00) to my children herein named, Edward Koenig, Adolph Koenig, Albert Koenig, Mary Newman, born Koenig, Christina Lanterman, born Koenig, Roseina Morehouse, born Koenig, Emma Prigmore, born Koenig, also my Grand-daughter, Bulah Flynt, all the above named, equal shares of the above amount of money, if there is so much left.

"Item 2nd.

"If over the above amount, Second shares comes to my Son, Frederick Koenig, and Henry Koenig with the above described children, equal shares of the second part.

"Item 3rd.

"To my step-son Nicholas Koenig and my step-daughter, Elizabeth Kassel born Koenig, I give and bequeath, $1.00, One dollar, apiece for both of them while each of my own children get, $4.00 Four Dollars, each. My step-children to get $1.00 one Dollar from every $5.00 Five Dollars of the second share.

"Item 5th.

"In case of my Grand-daughter's death, if she leaves no children her share of my property, is to be divided, equal shares to my children herein named, heirs of my body begotten.

"Item 6th.

"I desire and direct that the executor hereinafter named shall in one year after this my last will and testament is probated sell all my real and personal property of which, I may be possessed at the time of my decease or to which I am entitled at that time, to the Highest bidder, and convert the same into money, if two are against one of my children herein named, are satisfied to have said property sold to the Highest bidder."

At the time of his death the entire estate of the testator consisted of cash on hand, $1068.85, and real estate of the appraised value of $14,850.

The will is written on four sheets of paper, each signed at the bottom by the testator. From a photographic copy which appears in the record it is apparent that it was drawn by a scrivener, who, like the testator, was a German, and who evidently had scant knowledge of the effect of legal phrases as well as of the rules of punctuation. A period is placed after each proper name; others are used without any discrimination, as appears from the following excerpts:

"Also my. grand-daughter, Bulah. Flynt."

"Second shares comes to my. son. Frederick. Koenig. and. Henry. Koenig."

It is quite obvious, therefore, that in construing the will little aid can be gathered from the punctuation.

The district court rendered a judgment which includes certain findings of facts and conclusions of law. The court finds that the following are the children of the testator: Edward Koenig, Frederick Koenig, Henry Koenig, Adolph Koenig, Albert Koenig, Roseina Morehouse, Christina Lanterman, Emma Prigmore.

His grandchild is Bulah Martin, neé Flynt.

His stepchildren, who are the children of his own brother, are Nicholas Koenig, Elizabeth Kassel and Mary Newman. In addition to these he left five step-

children, children of his second wife. ' From the opinion of the trial court we quote as follows:

"The whole tenor of Frederick Koenig's will indicates that for the purpose of making his will, he considered his property as money, and with this thought in mind he disposed of it as if it was money. He divides his property into two parts, the first part consisted of $3,500.00 and the second part consisted of the residue of his estate. The sum of $3,500.00 he divides equally among Edward Koenig, Adolph Koenig, Albert Koenig, Mary Newman, Christina Lanterman, Roseina Morehouse, Emma Prigmore and Bulah Flynt. Mary Newman is a step-child and Bulah Martin, nee Flynt, is a grand-daughter. The other beneficiaries named in Item One are his own children.

"He speaks of all these beneficiaries as being his children although as stated, Mary Newman is a step-child and Bulah Flynt is a grand-daughter.

"Under the second Item of the will he gives the second part or residue of his property to his sons, Frederick and Henry Koenig and the above named children in equal shares. The devise in the second Item is a complete devise as to the residue of his estate, and if there was no modification of this item by other items of the will, it would dispose of all the residue of his property after bequeathing the $3,500.00. Having spoken of all the legatees under Item One of his will as his children, and having included his step-child, Mary Newman, and his grand-daughter, Bulah Flynt, in this list of his children, and having in Item Two referred to them as 'the above-described children,' it was evidently the intention of the testator to include Mary Newman and Bulah Flynt as beneficiaries under Item Two of his will and I so construe the will and hold that Mary Newman and Bulah Flynt are to be considered as beneficiaries with the rest of his children under Item Two. . . . I would have no doubt that this was the testator's meaning if in Item Three, which is to be construed together with Items One and Two, he had not used the words, 'my own children.'

"Though under Item Two he disposes of all the residue of his property in equal shares to the beneficiaries therein named, nevertheless, the devises and bequests in Item Two are modified by the devises and bequests in Item Three. The parts given to the beneficiaries in

Item Two are diminished by such parts as he gives to his step-children, Nicholas Koenig and Elizabeth Kassel. . . . In my opinion the expressions One Dollar and Four Dollars are intended to mean not so much money, but the proportions into which he has divided the residue of his estate. Therefore, the words, One Dollar, mean one part and the words, Four Dollars, mean four parts. As I construe the third item of the will he gives to Nicholas Koenig and Elizabeth Kassel together One Dollar or one part for every time that he gives to each of his own children Four Dollars or four parts. . . . In other words, his two step-children together get One Dollar or one share out of every Five Dollars or every five shares, that is, they together get one-fifth of his estate after paying the bequest of $3500.00."

The court held that by reason of the failure to exercise the conditional power of sale the real estate is to be treated as real estate and should be partitioned among the beneficiaries under the first, second and third items, and that moneys in the hands of the executor subject to distribution after paying debts and costs of administration should be applied to the payment of the $3500 mentioned in the first item of the will, and the residue of the $3500 should be made up from the proceeds of the sale of real estate.

There are a number of seeming inconsistencies in the will so that it can not be said that its construction is plain or that the intent of the testator can be easily determined. Taking the language of the entire will and considering it together we believe the court gave to it the most reasonable construction and arrived at what appears to us to have been the intent of the testator. We therefore adopt the construction of the learned trial court and the reasoning on which it is based.

In the opinion the court refers to other possible constructions that might be given to items two and three so as to exclude the stepdaughter Mary Newman and the granddaughter Bulah Flynt from the list of

beneficiaries therein on account of the use of the words
"my own children" in item three,. but calls attention
to the fact that elsewhere in the will where the testa-
tor wishes to distinguish between his own children and
his stepchildren, as in item five, he uses the words,
"heirs of my body begotten." The court found the
most difficulty in the construction of item three, and
held that the will would be comparatively easy of con-
struction except for some inconsistent expressions
found in that item.

In the briefs of the various parties there is con-
siderable controversy over the construction of the third
item of the will. In our view it was and is a matter of
no importance what construction is given to this item.
This brings us to a consideration of a part of the
judgment in which we think the court committed error.
It was alleged in the petition that the stepchildren,
Nicholas Koenig and Elizabeth Kassel, who are the
only ones specifically named in the third item, had
prior to the commencement of the action made a full
settlement with the executors and that each had been
paid the sum of $200, and had executed a release of all
claims under the will. The following is a copy of the
release signed by Nicholas Koenig, which is substan-
tially the same as the one signed by Elizabeth Kassel:

"$200.00          AUGUSTA, KANS., May 31, 1910.
    "Received of Edward Koenig, Albert Koenig execu-
tors of the estate of Frederick Koenig Two Hundred
Dollars in full payment of my distributive share of the
estate of Frederick Koenig in consideration of which
we hereby release all claim under the will of the said
Frederick Koenig."

In their answers Nicholas Koenig and Elizabeth Kas-
sel admit the execution of the releases and the payment
of the money mentioned therein, but allege that they
were obtained by fraud and misrepresentation. Nei-
ther of them testified at the trial, and no attempt was
made to prove that the releases were not freely and
fairly executed. The only evidence with respect to the

matter shows that they were drawn by the then counsel of these two appellees and were approved by the probate court. The district court, however, held as a matter of law that the releases are not binding, but are void under the statute of frauds for the reason that they do not name any grantee and fail to describe real estate. It is true that the releases refer to the distributive share, a term used in reference to personal property to be distributed by the probate court, but we think the trial court was right in that part of the opinion in which it was held that the testator's intention and purpose was to treat his entire estate as money, and that it was intended that the real estate should be sold and the proceeds distributed. Independent of this consideration, however, the releases were made to the executors who represented the estate, and the appellees therein expressly released all claim under the will. It was not necessary that the releases describe real estate nor that they mention the name of a grantee. They released all claims under the will, and having been fairly made and freely entered into they are binding upon the appellees. (18 Cyc. 1093; *Thornton et al. v. Mulquinne*, 12 Iowa, 549, 79 Am. Dec. 548.) While we think the trial court arrived at the most reasonable construction of item three, the execution of the releases does away with any necessity for attempting to reconcile the seeming inconsistent expressions in that clause of the will.

The principal complaint of the appellants is that the lower court gave undue importance to the third item, and that the first and second items show "a clear, exact, definite and complete disposition of all of the property of the testator." They therefore rely upon the doctrine of *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965, and *Holt v. Wilson*, 82 Kan. 268, 108 Pac. 87, that where there is a clear devise of land in fee simple it can not be limited and cut down by doubtful expressions in a subsequent portion of the will. We can not agree with

counsel that the first and second items show a clear intention of making a complete disposition of all the testator's property, and therefore the doctrine of the cases cited can have no application. The appellees Frederick Koenig and Henry Koenig were plaintiffs below, and they contend for a construction which differs from that made by the lower court and also from that argued by appellants. They contend that items two and three and the $3500 in the first item relate only to actual money on hand at the testator's death, and that the various divisions provided for in these items were not intended to apply to real estate. They rely to some extent on the expression, "if there is so much left," which is used in the first and second items. There is, however, no place in the will where the testator attempts to make a specific or general division of his real estate. In the sixth item he directs the sale of his property, real and personal, for the purpose of converting it into money.

The construction contended for by the cross-appellants, who are testator's own children, is that the following portions of the will control the disposition of all the real estate:

"As to my worldly estate and all the property of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, whether real, personal or mixed in my name, I devise, bequeath and dispose thereof in the manner following, to wit: *Imprimis* [then follow provisions for payment of debts].

"Item 1st. To my beloved children I give and bequeath, in equal shares to each, share and share alike.

"Item 6th. I desire and direct that the executor hereinafter named shall in one year after this my last will and testament is probated, sell all my real and personal property of which I may be possessed at the time of my decease or to which I am entitled at that time, to the highest bidder, and convert the same into money; if two are against one of my children herein named are satisfied to have said property sold to the highest bidder."

49—92 KAN.

This is a forced construction which divides item first into two separate clauses, places a period after the word "alike" where there is a comma and where a comma is properly used because it is followed by the words, "if there is so much left after my death." The whole item must be construed together. The first three lines describe no property that he gives to any one. It is an incomplete expression, and what follows, "I give and will thirty-five hundred dollars, $3500, to my children herein named," is in part a repetition of what the testator started to say in the first part of the paragraph. The expression "my children" is clearly defined by the testator himself, and the identity of the persons he had in mind can not be regarded as at all doubtful, because he proceeded in the same item or clause to name them; and obviously included in the expression "my children" Mary Newman, a stepchild, and Bulah Flynt, a granddaughter.

The construction contended for by appellees Nicholas Koenig and Elizabeth Kassel, as set forth in briefs filed by their counsel, would give them an undivided one-fifth interest in the entire estate, or in any event, they claim that proportion of the residue of the real estate after payment of the sums mentioned in the first two items, but these appellees having released all their claims under the will are no longer interested in the construction of its provisions. As to the contention of the appellants and those of the cross-appellants, it is sufficient to add to what has been said that our construction of the will in its entirety accords with the view taken by the court below. We think it was the intention of the testator to regard all his property as money and to divide it into two portions, the first of $3500, if there was so much left; and this portion was to be divided equally among the persons named in the first item, referred to therein as his children, although one was a stepchild and one a granddaughter. The second item must be regarded as referring to the residue of his estate, the disposition of which is con-

trolled by the provisions of items first and second the same as though the third item had been omitted from the will because of the release of all claims thereunder by the only persons interested therein.

It follows, therefore, that the judgment will be modified to the extent made necessary by excluding Nicholas Koenig and Elizabeth Kassel from any interest in the estate.