No. 35,224 .

GILBERT C. WHITSITT, as an Individual and as Administrator with the Will Annexed of the Estate of Elizabeth Lewis Whitsitt, Deceased, *Appellee,* v. ROSE A. MULKEY and C. M. LEWIS, *Appellants.*

(114 P. 2d 836)

Opinion filed July 5, 1941.

*Everett E. Steerman* and *Owen S. Samuel,* both of Emporia, for the appellants.

*Thomas C. Forbes* and *Harold G. Forbes,* both of Eureka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to construe a will. Judgment was for the plaintiffs. Defendants appeal.

The will was that of Elizabeth Whitsitt. It was as follows:

"EMPORIA, KAN., November 21, 1925.

*"To Whom It May Concern:*

"I being a person of sound mind and perfect health do make this my last will and testament.

"First, that in case of my death my interest in my father's estate shall go back to my mother, Mrs. O. E. Lewis, of Ottawa, Kan. Said property consists

of an undivided interest with my mother, sister and brother, in two pieces of farm land located in Okmulgee county, Oklahoma, one piece in Sec. 1-14-14, the other in Sec. 6-14-15. Also some city lots in the town of Sapulpa, Okla. My interest in these I desire to revert back to my mother.

"Second, on January 1, 1923, my husband and myself put our moneys together and invested in the Coca-Cola Bottling Works located in the city of Emporia, Kan. The $2,000 which I put into this business I also heired through my father. This I bequeath to my husband, Gilbert C. Whitsitt, to do with as he please so long as he shall live. In case my husband should die, and our unborn child should die also, I desire that this money, together with eight percent on it from the time it was invested in said plant, said interest to be compounded annually, to go to my mother, or in case she is not living, to be divided equally between my brother, C. M. Lewis, now of Salina, Kan., and my sister, Rose A. Lewis, now of Ottawa, Kan., or their heirs. This money has been invested in this business, and has made money; interest on it shall be paid out of the accumulations.

"Third, in case my child, which is yet unborn, should live I desire that my mother should raise it. Knowing she would do better by it than any other person, and that she would use what little property I leave to the best advantage of this child.

"Fourth, my life insurance policy of $1,000 is made to my husband; this will no doubt be ample to pay all my doctor, hospital and funeral fees. In case it shouldn't, my husband will make up the deficiency.

"Fifth, my mother shall have perfect right to take from my house any article or articles which she has given me during my lifetime, and which she may want."

It was the second paragraph of the above will which plaintiff sought to have construed.

The plaintiff was the husband and sole heir at law of Elizabeth, and also administrator of her estate. The defendants were her brother and sister.

The petition alleged that Elizabeth died testate December 12, 1939; that her will was admitted to probate July 1, 1940; that plaintiff was appointed administrator and duly qualified; that on the 12th day of December, 1939, plaintiff was the husband of Elizabeth; that no children were born to them, and no children were adopted by them, and plaintiff was the sole heir at law of Elizabeth. The petition further alleged that the will of Elizabeth was ambiguous, and an actual controversy existed between plaintiff and defendants. The second paragraph of the will was set out, and the petition then alleged that the bequest therein was an absolute devise of the property therein to plaintiff, the attempted devise to defendants being conditioned upon the demise of plaintiff prior to the death of Elizabeth. The petition charged that defendants claimed some interest in

the property of Elizabeth by the terms of this paragraph. The petition then alleged that the third and fourth paragraphs of the will were meaningless under all the circumstances.

The prayer was that the court construe the will, and determine the rights of the parties.

The answer admitted the allegations of fact in the petition. The answer further alleged that plaintiff was devised a life estate, in the interest of Elizabeth, in the Coca-Cola Bottling Works of Emporia, and that upon his death the heirs, devisees, legatees and assigns of plaintiff would take title to the interests of Elizabeth in the property charged with the payment to defendants of $2,000, with interest therein at eight percent from January 1, 1923, computed annually. The answer stated the unborn child did not live, and that the mother of Elizabeth was dead.

The prayer of the answer was that the defendants be adjudged to be legatees under the will.

The reply was a general denial.

When the case came on for trial the parties stipulated that the copy of the will attached to the petition was a true copy; that at the time of writing the will the testatrix was pregnant and expecting the birth of a child in a short time; that at the time of the death of testatrix her child was dead, and her husband, the plaintiff in the action, was living, and was the sole heir at law of Elizabeth; that the only question involved was, construing the will as a whole, what was the legal interpretation of paragraph 2; that at the time of bringing the action the mother of Elizabeth was dead, she having died two weeks before the death of Elizabeth.

Neither party offered to introduce any further evidence.

The trial court gave judgment to the effect that the language of the will constituted a devise of the property described therein to Gilbert C. Whitsitt in fee and that defendants took nothing themselves.

A motion for a new trial was overruled. Hence this appeal.

All the parties call to our attention the rule so often stated by this court that in the construction of a will the intention of the testator will be determined and followed. See *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177; also *Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569, and to the further rule that in determining this intention this court will examine the entire will. See *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15. To both these rules we still adhere. Our problem

is to ascertain just what was the intention of the testatrix. The defendants have analyzed the language of the will and argue here as they did in the trial court that Elizabeth intended that the property she inherited from her father's estate should go to her mother, if she be living, and if her mother be dead, then to her brother and sister, and that her husband under no circumstances was to receive any of that property except the use of it during his lifetime.

We shall examine the will. In the first clause the testatrix bequeathed an interest in her father's estate which was still undivided to her mother. The will was made in 1925. Testatrix did not die until 1939. It was stated in the oral argument that this clause had been put into effect by testatrix before her death by means of conveyances. It should be noted, however, that in this clause testatrix did not mention her unborn child or her husband. There would have been no question but that this interest in land would have gone to her mother in fee.

The next clause is the one that troubles us. It should be noted that the testatrix first stated that on January 1, 1923, she and her husband put the money that each owned into the Coca-Cola Bottling Works in Emporia. She then, evidently still thinking of the first clause wherein she disposed of her undivided interest in real estate, stated that the $2,000 she put into this business she also "heired through her father." (Not just the way a lawyer would have written it, but we have no trouble getting her idea.) It is plain, too, that she had a different plan in mind for her share in the bottling works than she had for the undivided interest in real estate. First, she said "This I bequeath to my husband." Had she stopped there we would have no trouble. The share would have gone to her husband and no questions asked. But she went further, and said, "To do with as he pleased so long as he shall live." Defendants argue that this language in the will limited the estate of the husband to a life estate. This is what the trial court thought and we agree with that conclusion. However, the matter is not so easily disposed of. In case the husband took only a life estate, what became of the remainder? No remainderman was named and no disposition was made of the remainder. The husband was the sole heir of the testatrix. The reversionary interest vested in him at her death. See 69 C. J. 622.

G. S. 1935, 22-258, provides as follows:

"Every devise of real property in any will shall be construed to convey all

the estate of the testator therein which he could lawfully devise, unless it shall clearly appear by the will that the testator intended to convey a less estate."

The rule is well established that where possible a construction will be given a will which will prevent a partial intestacy rather than one that will permit it. See *In re Brown,* 119 Kan. 402, 239 Pac. 747.

*Jameson v. Best,* 124 Kan. 633, 261 Pac. 582, was a case where the will gave certain property to named devisees "to have and to hold the same, for and during their natural lives." There was no disposition of the remainder. The will provided that the only other heir of the testatrix besides those to whom the life estates were devised should not participate in the final division of the property of testatrix. Construing the will, this court said:

"If we apply the principles heretofore declared in this state concerning the interpretation of wills and consider the language of the whole will in controversy, the reasonable interpretation of it is that the property devised should go to the three devisees named in fee, and that the will excluded Joseph H. Crammer and has family from any participation whatever in the property of the testator." (p. 636.)

See, also, 69 C. J. 546.

We hold, therefore, that the effect of the language used, in so much of the will as we have construed so far, was to devise an undivided one half of the property to the plaintiff, the other undivided half he took as sole heir of his wife.

This brings us to the next provision of the second clause of the will. For convenience it will be set out here. The testatrix next said:

"In case my husband should die and our unborn child should die also, I desire that this money, together with eight percent on it from the time it was invested in said plant, said interest to be compounded annually, to go to my mother or in case she is not living to be divided equally between my brother, C. M. Lewis, now of Salina, Kan., and my sister, Rose A. Lewis, now of Ottawa, Kan., or their heirs. This money has been invested in this business and has made money. Interest on it shall be paid out of the accumulations."

The defendants contend that by this language the testatrix intended to provide that at the death of the husband of Elizabeth this $2,000, with interest at eight percent compounded annually, should be paid to her mother or if she was not living to the defendants here,. the brother and sister. This construction would mean that the husband would take the property subject to this payment.

The plaintiff contends that she intended the provision about payment of the money with interest to her mother should not come into

effect unless two things should happen, that is, the death of the un-born child and the death of the husband before her death.

The trial court adopted the view of the plaintiff.

Our problem is to examine this language and ascertain what was intended by the testatrix.

In the first place, she must have intended some contingency. Now she knew, as we all do, that the unborn child and the husband were both certain to die sometime—hence it is logical to assume that the contingency she had in mind was that they should die before she died, and that if they, or either of them, outlived her then the con-tingency had not happened and the provision would be of no effect. It should be stated here for the benefit of all that while the record does not disclose but what the child did live a little while, both par-ties stated in oral argument that the child was stillborn and never did live at all. However, the testatrix did not know this when she made her will. She was providing for the welfare of her child. She used the same language with reference to the child that she used with reference to her husband, that is, "should die" and "our unborn child should die also," evidently coupling the two events in her mind by the way she wrote. Now, if the husband should have died before she did, and the child had been born and been alive when she died, it is hardly logical to think that she intended to put the burden of paying this $2,000, together with interest compounded annually at eight percent from 1923, upon the child for whose welfare she was apparently providing.

Furthermore, she said "should die" in each case rather than "at the death of," which is persuasive that she was intending to provide for the contingency of death of one or the other or both before her death.

Consideration of this provision also throws a little light upon the life estate problem which we have discussed heretofore. The owner of a life estate is entitled to the income therefrom, but if the clause we are just discussing should be construed as defendants contend it should be construed, then the husband to whom all parties agree the life estate was given would have to pay interest upon this fund for the time he used it. It does not seem that this could have been the intention of the testatrix.

We have concluded, therefore, that the trial court was correct in finding that the testatrix by this language intended to provide that

the $2,000 should be paid to the defendants only in case the unborn child and the husband should both predecease the testatrix.

At the motion for a new trial the defendants presented affidavits of certain parties to the effect that there had been marital trouble between Elizabeth and her husband and that she had made statements with reference to her intention as to her property. It is argued by defendants that they should be given a new trial on account of this newly discovered evidence. We have examined these affidavits and also the record of the trial. There is no evidence at all that the facts set out in these affidavits were not available to defendants at the time the case was tried. In fact, the affidavits were made by the two defendants and the husband of one of them. Under the circumstances it was not error for the court to refuse to grant a new trial on account of the fact that this was newly discovered evidence.

The judgment of the trial court is affirmed.

ALLEN, J. (concurring): The will was dated November 21, 1925. The unborn child mentioned in the will died at birth. The testatrix died December 12, 1939, and was survived by her husband.

The second clause of the will disposed of the property therein described in the following language: "This I bequeath to my husband, Gilbert C. Whitsitt, to do with as he pleases so long as he shall live. In case my husband shall die and our unborn child should die also" then the property was to go to the mother and to the brother and sister of the testatrix as provided in the latter portion of the paragraph.

Manifestly the chief concern of the testatrix was to provide for her husband and the unborn child. If both survived the testatrix they were to have the property. If either the husband or the child died before the testatrix, the property was to go to the survivor. If both died before the testatrix then the gift over to the mother and to the brother and sister was to become effective. The gift over was a substitutionary gift. The clear purpose was to avoid an intestacy. This seems to be the only reasonable construction to be given the words "in case my husband should die and our unborn child should die also." Death of the husband and child in this clause is referred to as an event which might not occur. Since death itself is an event certain to occur, the contingency, thus provided for, can only exist with respect to some other event—and that other event must be the death of the testatrix. Clearly, the gift to the mother and to the brother

and sister was to take effect only in the event the primary devisees, the husband and the unborn child, should both die before the testatrix. That contingency did not occur—hence the gift over failed.

If the foregoing analysis is correct it is unnecessary to determine whether the surviving husband received a life estate or an absolute interest under the will. If a life estate, the reversion passed by descent to the heir of the testator, and the husband was her sole heir. On either theory the surviving husband has the absolute interest in the property.