No. 35,437

Albert T. Dyal, *Appellant*, v. Harlan H. Brunt, Edith M. Brunt, Edwin Hossfeld and Milton Hossfeld, Edith M. Brunt and A. D. Weiskirch, Jr., Coadministrators of the Estate of Lillian Eyth, Deceased, *Appellees*.

(123 P. 2d 307)

Opinion filed March 10, 1942.

*Ralph Oman*, of Topeka, argued the cause, and *Robert Stone, James A. Mc-Clure, Robert L. Webb, Beryl R. Johnson*, all of Topeka, *Vernon B. Hill, S. R. Greer* and *Julius F. Franki*, all of Mission, Tex., were on the briefs for the appellant.

*A. D. Weiskirch, Jr.*, of Topeka, argued the cause for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was an action to construe a will and to recover

property plaintiff alleged he was entitled to under it. The court acceded to the request of the parties to pass upon the legal questions involved in the construction of the will in advance of the trial upon questions of fact. The trial court construed the will contrary to plaintiff's contention in at least one important particular, and he has appealed.

The pertinent facts are not controverted and may be stated as follows: The plaintiff, Albert T. Dyal, born October 10, 1903, is the son and only child of William A. Dyal and his wife, Salome Crowe Dyal. His mother died in 1905 and some two years later William A. Dyal married Lillian Hossfeld. There were no children by the second marriage. William A. Dyal died January 9, 1918, leaving a will, executed December 11, 1917. At the time of his death his only heirs at law were his wife, Lillian Dyal, and his son, Albert T. Dyal, plaintiff herein, and they were the only persons named as beneficiaries under his will. At the time of his death he was the owner of several parcels of real property and of considerable personal property, including a substantial going business. As written, the body of the will contained nine paragraphs, four of which were numbered; the others were not. For convenience of reference the trial court used the Roman numerals I to IX to designate the paragraphs. The first seven of these paragraphs read as follows:

I. "First, I direct that all indebtedness, including that of last illness, funeral expenses and the erection of a suitable monument, be first paid.

II. "Second, I give, grant, devise and bequeath to my wife, Lillian Dyal, our home, being lot two (2) on Greenwood avenue in Potwin Place together with the furniture, household goods and equipment contained therein; also the north twenty-three and two-thirds (23⅔) feet of lot twenty-seven (27) on Kansas avenue in the city of Topeka, all in Shawnee county, Kansas.

III. "Third, I give, grant, devise and bequeath to my son, Albert T. Dyal, lots thirty (30) and thirty-two (32) and an undivided one-half interest in lot fifty (50) all on Kansas Avenue North in the city of Topeka, Shawnee county, Kansas.

IV. "Said property to be held in trust by my wife, Lillian Dyal, and to be managed by her, for the use and benefit of said Albert T. Dyal, without bond, until the said Albert T. Dyal shall arrive at the age of twenty-one years.

V. "Fourth, all the residue and remainder of my estate both real and personal I give, grant, devise and bequeath to my wife, Lillian and to my son, Albert T., share and share alike, the share of my son Albert T. to be held in trust by my wife, Lillian, and to be by her managed and cared for, without bond, until said Albert T. shall arrive at the age of twenty-one years.

VI. "If my wife shall depart this life before this will takes effect I give, grant, devise and bequeath the part of my estate herein given to her, to my

son, Albert T. Dyal, and if my son Albert T. Dyal, shall depart this life before this will takes effect I give, grant, devise and bequeath the part given to him to my said wife, Lillian.

VII. "In case my wife and myself should die in or as the immediate result of a common casualty or in case she should die without having used or otherwise disposed of the property herein devised and bequeathed to her, I give, grant, devise and bequeath the same to my son Albert T. Dyal."

By the VIIIth paragraph Lillian Dyal was named executrix with authority to sell and convey the real property, and the IXth paragraph gave her similar authority as executrix and as trustee for the son respecting the personal property.

The will was duly admitted to probate on January 15, 1918. The widow, Lillian Dyal, filed a written election to take under the will. She was duly appointed and qualified as executrix and duly administered the estate and closed the administration. On March 22, 1918, she was appointed by the probate court to act as trustee of the property which passed by the will to the son, and continued to act as such trustee until he became twenty-one years of age, and made her report and was finally discharged as such trustee on November 12, 1934. She died intestate on June 5, 1941, leaving as her sole heirs at law two brothers and one sister. Coadministrators have been appointed for her estate, who have entered upon and taken possession of all of the property belonging to her at the time of her death. Plaintiff has made demand upon them for the property which he claims passed to him under the will, which demand was refused.

After issues were joined and a hearing the court made findings of fact, substantially as above stated, and the following conclusions of law:

"1. Paragraph II is a devise and bequest in fee of the real and personal property therein described to Lillian Dyal and is not limited by the provisions of paragraph VII.

"2. Paragraph III is a devise in fee of the real property therein described to Albert T. Dyal and is not now limited nor restricted by any subsequent provision of the will.

"3. Paragraphs V, VI and VII, after applying the facts as they existed upon the death of Lillian Dyal and after eliminating from these paragraphs the provisions which, upon the death of Lillian Dyal, were inoperative, would read as follows:

" 'All the residue and remainder of my estate both real and personal I give, grant, devise and bequeath to my wife, Lillian, and to my son, Albert T., share and share alike. In case my wife should die without having used or otherwise disposed of the property *herein* devised and bequeathed to her, I give, grant, devise and bequeath the same to my son, Albert T. Dyal.' (Emphasis mine.)

"4. I conclude that the phrase 'herein devised and bequeathed to her' which appears in paragraph VII refers only to the one-half of the residue and remainder of the estate given to the wife in paragraph V.

"5. I further conclude that if there remained any of the one-half of the residue of the estate given to Lillian Dyal by paragraph V and which she had not 'used or otherwise disposed of,' that such remainder passed to Albert T. Dyal upon the death of Lillian Dyal."

Judgment was rendered in harmony with these conclusions of law.

Appellant complains of the trial court's conclusions of law and especially of those numbered 1 and 4, and argues that the court, in ascertaining the intention of the testator, was not justified in excising paragraph VI and the first part of paragraph VII and in redrafting paragraphs V, VI and VII, as was done in the court's conclusion of law No. 3. The point is well taken. It is true, when a will provides for several situations, any one of which might exist when distribution under the will is to be made, and the others not, distribution will be made in harmony with the conditions which then exist. But this does not mean that in ascertaining the intention of the testator provisions of the will relating to situations which do not exist when the distribution is to be made are to be excised from the will if they do in fact throw light upon the purpose and intent of the testator.

The correct rule to be used by the court in construing a will is to put itself as nearly as possible in the situation of the testator at the time the will was made and with this situation in mind to give force and meaning to the language used in the will, and from all this to ascertain and determine the purpose and intent of the testator. Naturally, the testator in making his will takes into consideration the amount and character of his property and the names and relationships of those who are entitled to be beneficiaries, and in planning the will looks to the future. The court is not justified some twenty years later in taking a retrospective view and saying that because some of the situations provided for in the will do not exist, such provisions throw no light upon the intention of the testator, and hence must be disregarded and the will in effect rewritten.

In support of the conclusion of the trial court appellees cite *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965, where a will, in the first item, used language which, standing alone, made a complete bequest and devise of the testator's property to his wife, and a second item provided that at her death what then remained should be divided among three named persons. In construing the will the

court held the clauses to be repugnant and that the second must be ignored. This holding cannot be given force here for two reasons: *First,* it does not appear at all certain that the trial court attempted to apply that doctrine in reaching its conclusion in this case; but, *second,* which is much more important, the doctrine there announced has been disapproved repeatedly by subsequent decisions of this court. It was followed specifically in *Holt v. Wilson,* 82 Kan. 268, 271, 108 Pac. 87, and was referred to approvingly in *Safe Deposit Co. v. Stich,* 61 Kan. 474, 478, 59 Pac. 1082; *Lohmuller v. Mosher,* 74 Kan. 751, 754, 87 Pac. 1140; *Hurst v. Weaver,* 75 Kan. 758, 763, 90 Pac. 297; *Overly v. Angel,* 84 Kan. 259, 263, 113 Pac. 1041; *Thornberry v. Fletcher,* 91 Kan. 744, 747, 139 Pac. 391; *Twist v. Twist,* 91 Kan. 803, 805, 139 Pac. 377, and possibly in some other cases. At best the rule followed in the McNutt case was to some extent in conflict with the rule previously announced by the court in *Donohue v. Donohue,* 54 Kan. 136, 139, 37 Pac. 998, where it was said:

"Every will should be construed in accordance with the intention of the testator, as expressed in or implied from the language."

And in *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, where it was held:

"A will is to be construed, not alone by its language, but by the condition of the testator's family and estate; and the judicial expositor should put himself as far as possible in the position of the testator, and take into consideration the circumstances surrounding him when the will was executed.

"It is a general rule that a will should be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument." (Syl. ¶¶ 1, 3.)

The same rule had been applied to the construction of a contract. (*Palmer v. Blodgett,* 60 Kan. 712, 57 Pac. 947.)

The McNutt case was distinguished in several cases (*Chase v. Howie,* 64 Kan. 320, 67 Pac. 822; *Coleman v. Coleman,* 69 Kan. 39, 76 Pac. 439; *Hawkins v. Hansen,* 92 Kan. 73, 139 Pac. 1022, where the court recognized "each will must be construed by its own terms"; *Koenig v. Koenig,* 92 Kan. 761, 142 Pac. 261; *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950; *Postlethwaite v. Edson,* 98 Kan. 444, 155 Pac. 802; *Bryant v. Flanner,* 99 Kan. 472, 162 Pac. 280, and perhaps in some other cases). In *Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800, it was held:

"The intention of the testator . . . is not controlled nor defeated by the fact that the scrivener divided the words used to express the making of a gift by the testator to a beneficiary into three paragraphs instead of including all in a single paragraph." (Syl. ¶ 2.)

And in *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499, it was said:

"A rule for the interpretation of wills, to which all other rules are subordinate, is that the intention of the testator, as gathered from all parts of the will, is to be given effect. . . ." (Syl. ¶ 1.)

And in *Scott v. Gillespie,* 103 Kan. 745, 176 Pac. 132, the court specifically held:

"The old rule, that the devise of a fee may not be impaired by a subsequent contradictory provision, is qualified by the modern rule, that the intention, as gathered from all parts of the will, must control." (Syl. ¶ 3.)

This was specifically followed in *Otis v. Otis,* 104 Kan. 88, 177 Pac. 520; and in *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, it was held:

"Rule followed that in the construction of a will the testator's intention is to be gleaned from the entire text of the testament, and not by giving such controlling significance to any one paragraph as to render abortive other and subsequent provisions of the will which likewise indicate part of the testator's purposes." (Syl. ¶ 1.)

And in the opinion it was said:

"The old rule that a seemingly unqualified devise in an independent and prior clause of a will cannot be diminished by separate, subsequent clauses of the will (*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965; 4 Kent Comm. 270), has been largely superseded by the modern Kansas rule, that the testator's intention is to be gleaned 'from the four corners of the instrument'—from the entire text of the document. Some of our earlier cases foreshadow the coming of this doctrine. (*Williams v. McKinney,* 34 Kan. 514, 519, 9 Pac. 265; *Ernst v. Foster,* 58 Kan. 438, 47 Pac. 527), and this court was fully committed to it in *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950, and has followed it consistently in all the later cases. (*Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800; *Postlethwaite v. Edson,* 98 Kan. 444, 155 Pac. 802; Id., 102 Kan. 104, 619, 171 Pac. 769; *Bryant v. Flanner,* 99 Kan. 472, 162 Pac. 280; *Brown v. Brown,* 101 Kan. 335, 166 Pac. 499; *Scott v. Gillespie,* 103 Kan. 745, 176 Pac. 132; *Otis v. Otis,* 104 Kan. 88, 177 Pac. 520.)" (p. 95.)

Subsequent decisions ignore or disapprove the rule of law applied in the McNutt case and follow the general rule that in construing a will the surroundings of the testator may be taken into consideration, and that in view of those surroundings the will must be interpreted in harmony with the language used therein, all parts of the will being considered, and that the intention of the testator, shown by the con-

sideration of these matters, governs in the construction of the will. See *Pearson v. Orcutt,* 106 Kan. 610, 189 Pac. 160, and 107 Kan. 305, 191 Pac. 286; *Utilities Co. v. Bowersock,* 109 Kan. 718, 729, 202 Pac. 92; *Mansfield v. Crane,* 116 Kan. 2, 4, 225 Pac. 1087; *Hinshaw v. Wright,* 124 Kan. 792, 262 Pac. 601; *Stanolind Pipe Line Co. v. Ellis,* 142 Kan. 102, 104-5, 45 P. 2d 846; *Pedroja v. Pedroja,* 152 Kan. 82, 87, 102 P. 2d 1012; *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177; *Whitsitt v. Mulkey,* 154 Kan. 138, 114 P. 2d 836. These cases demonstrate that since 1914 the rule applied in *McNutt v. McComb,* supra, has been disapproved repeatedly and that it has no more weight now than if at that time it had been specifically overruled. It is futile to rely upon it now. We feel confident the trial court did not attempt to do so.

Considering the situation of the testator with respect to his property and his family, and considering the language of his will, we think it not difficult to determine his intentions. He owned several parcels of real property—nine are described in the petition—the value of which is not shown, and personal property, including a going business, valued at more than $28,000 in the inventory and appraisement filed by his executrix. His heirs at law were his wife and his son, then fourteen years of age, related to each other by affinity only. Obviously, he meant to provide well for each of them. There is nothing in his will tending to show that he wanted any of his property to go to anyone else. He gave his wife (paragraph II) the home with its furnishings and another parcel of real property. He gave his son (paragraph III) two parcels of real property and provided (paragraph IV) that his wife, as trustee for the son, should manage the property during the son's minority. The remainder of his property—a substantial part if not the bulk of his estate—he gave (paragraph V) to his wife and son in equal shares, she to manage his share as trustee during his minority. While making these gifts in language which, if standing alone, would make the respective gifts to his wife and son complete, he had in mind and incorporated in his will alternative dispositions of his property dependent upon situations which might arise.

By paragraph VI the testator made an alternative devise and bequest of all his property to his son in the event of his wife's death before the will became effective. There is no reason to say he did not intend this provision to apply to the devise and bequest made to the wife in paragraph II as well as those made to her in paragraph V.

By paragraph VII the testator made an alternative devise and bequest of all his property to his son in the event he and his wife should die as the immediate result of a common casualty. There is no reason to say he did not intend this provision to apply to the devise and bequest made to the wife in paragraph II as well as those made to her in paragraph V.

And in the same paragraph, and as a part of the same sentence, he made an alternative devise and bequest to his son in case the wife should die without having used or disposed of the property previously devised and bequeathed to her. We see no reason to say that this provision should be segregated from the other alternative devises and bequests and given an entirely different meaning.

In its conclusions of law the trial court emphasized the word "herein" as used in paragraph VII. But it is only by excising from the will the last part of paragraph V, all of paragraph VI, and the first part of paragraph VII, and redrafting those three paragraphs in one that the word "herein" is so closely related to the devise and bequest in paragraph V that it can be said to apply to that alone.

In construing wills courts have no authority to reform the will or to excise from it important provisions which have a bearing upon the testator's intention. (*Hoover v. Roberts,* 144 Kan. 58, 58 P. 2d 83; *Alexander v. Goellert,* 153 Kan. 202, 205, 109 P. 2d 146.)

It should be noted that the words "give, grant, devise and bequeath" are used in each of the paragraphs II, III, V and VII to express the gifts made in those paragraphs. We see no reason to say that they are used with less force in one paragraph than in the others.

In the alternative provision evidenced by paragraphs VI and VII only one situation is stated in which the son does not receive property, and that is if he should die before the will becomes effective, while there are two circumstances named under which the wife receives no property; if she should die before the will becomes effective, or if she and the testator should die as the result of a common casualty, and one in which the property given to her is not used or disposed of by her at the time of her death. There is no reason all these provisions should not be given effect in determining the testator's intention.

In view of the fact that the hearing in the trial court was upon questions of law in advance of the trial of the issues of fact there has been no determination as to what property given to the wife by

paragraphs II and V had not been used or disposed of at the time of her death.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions to proceed further with the case in harmony with the views herein expressed. It is so ordered.

Hoch, J., not participating.

Allen, J. (concurring): The will of the testator provided: "I give, grant, devise and bequeath to my wife" certain property. This language was effective to create an estate in fee simple absolute in the real estate and an absolute interest in the personal property. By a later clause it was provided that in case his wife "should die without having used or otherwise disposed of the property herein devised and bequeathed to her, I give, grant, devise and bequeath the same to my son Albert T. Dyal."

The question is whether the gift to the son is good.

It is clear that the widow was given the power to dispose of the property by deed or by will. While the power is not stated in express words, it is implied from the gift over to the son of such portion of the property that was not disposed of by the widow. If the power to dispose of the property by deed or by will was not exercised, the property undisposed of by the widow, and of which she died intestate was to go to the son. The real question then is whether a gift over on intestacy is good.

The leading case on this question is *Jackson v. Robins*, (1819) 16 Johns. 537. In that case the court was called upon to construe a will in which the testator devised property to his wife in fee simple and then provided that in case of her death without giving, devising and bequeathing by will, or otherwise selling or assigning the said estate, or any part thereof, then such parts thereof as should so remain unsold, undevised or unbequeathed, unto his daughter Catharine Duer. The opinion of the court was delivered by Chancellor Kent. The court held the gift over was void and that the widow took an estate in fee simple absolute. The argument of Kent, stated in that opinion, was formulated in his Commentaries in the following passage:

"Nor can an executory devise or bequest be prevented or destroyed by any alteration whatsoever, in the estate out of which, or subsequently to which, it is limited. The executory interest is wholly exempted from the power of the first devisee or taker. If, therefore, there be an absolute power of disposition

given by the will to the first taker, as if an estate be devised to A in fee, and. if he dies *possessed* of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should *leave,* or without *selling* or *devising* the same; in all such cases the remainder over is: void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will. A valid executory devise cannot subsist under an absolute power of disposition in the first taker. When an executory devise is duly created, it is: a species of entailed estate, to the extent of the authorized period of limitation." (4 Kent's Commentaries, 14th ed., 305.)

A similar question was presented to this court in *McNutt v. Mc-Comb,* 61 Kan. 25, 58 Pac. 965. The court quoted the passage from. Kent's Commentaries above set out and decided the case on the theory that the gift over was void as a remainder, because of the preceding fee, and void by way of executory devise because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will.

In 2 Simes, Future Interests, 510, it is stated:

"If a fee simple in land or a like interest in personalty is given, coupled with an absolute power of disposal by deed or will, the great weight of authority is to the effect that a gift over in the same instrument of what remains undisposed of is void. Hundreds of decisions lay down this rule. Not infrequently the gift over is upon some other contingency in addition to a failure to dispose of the property, such as death without children or without issue. By far the most common situation is that of a gift to the testator's wife, with express or implied powers of disposal, followed by a gift over of 'what remains' to the testator's children or heirs. But, regardless of these variations, the result is generally the same—the gift over is void."

Various reasons have been advanced in support of the rule, but there is little doubt that the American decisions have been influenced by Chancellor Kent's decision in *Jackson v. Robins.* The majority opinion gives a catalogue of our cases where the rule announced in *McNutt v. McComb* has been followed, distinguished and repudiated. But it is a singular fact that in none of the cases in which that case was criticised was the doctrine of Kent, therein quoted and upon which the decision rested, mentioned or discussed. It seems to have been a general impression that the rule was based upon a constructional preference for a prior over a subsequent clause.

If *McNutt v. McComb* is to be overruled, a case based upon a doctrine formulated by Chancellor Kent, later reëxamined on principle and reaffirmed in *Van Horne v. Campbell,* 100 N. Y. 287, 3 N. E. 316, 53 Am. Rep. 166, and endorsed by the great weight of

authority in America, it would seem fitting that an outline of the controlling question should be stated.

To understand the theory of Kent quoted and relied on in the McNutt case, it is necessary to bear in mind the nature of a contingent remainder, and also the rule that an executory devise is indestructible.

At common law a contingent remainder would fail if it did not vest before or immediately upon the termination of the preceding estate of freehold. Thus in the often cited case of *Festing v. Allen,* 12 M. & W. 279, the testator devised land to his granddaughter during her life with remainder to her children who should attain the age of twenty-one years. The granddaughter died, leaving three minor children. It was held the remainder to the children failed. (The rule as to the destructibility of contingent remainders was repudiated in this state in *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953.)

Where there was a life estate with contingent remainders over, it was possible for the life estate to be destroyed during the life of the life tenant. In such case if the contingent remainder had not vested, it would never take effect. Suppose A, an owner in fee simple, should devise land to B for life, remainder to the heirs of C. A dies, leaving X as his only heir. The ultimate fee is divided between X who has the reversion by descent and B the life tenant. If, then, X and B should convey to Y, the life estate in B would merge with the reversion, giving Y a fee-simple estate. The result was the destruction of the contingent remainder in the heirs of C.

It was also a settled common-law rule that if a life tenant made a tortious alienation his life estate was destroyed and a contingent remainder limited upon such life estate could never take effect.

These rules were in effect when the case of *Pells v. Brown,* Cro. Jac. 590, 79 Eng. Rep. 504, was decided in 1620. In that case the testator devised land to his son Thomas in fee, but provided that if Thomas should die without issue in the lifetime of his brother William then the land was to go to William. Thomas suffered a common recovery and tried to destroy the contingent interest of his brother William in the same manner as contingent remainders could be destroyed. The interest of William was contingent, but it was not a contingent remainder but an executory devise. When the court held that the executory devise in William could not be destroyed as contingent remainders could be destroyed it was necessary to formulate a rule fixing the time within which such con-

tingent interests must vest and the rule thereafter formulated is called the rule against perpetuities.

The argument of Kent was based on the doctrine announced in *Pells v. Brown* that executory devises were indestructible. The following passage from 2 Simes, Future Interests, page 525, is pertinent:

"When we come to consider Chancellor Kent's argument to the effect that an executory devise is necessarily indestructible, we find one which is peculiarly American; no trace of it being found in the English decisions. No better illustration than this can be found of the power of words to affect the course of judicial decision. Kent's argument is this: By the decision in *Pells v. Brown*, executory devises, unlike contingent remainders, are indestructible. A limitation in a will following a fee or absolute interest in personalty is necessarily an executory devise and not a remainder. A power of disposal in the first taker would render the gift over destructible. Hence the gift over is void. The fallacy lies in the use of the word 'destructible' to mean two different things. What *Pells v. Brown* meant was that an executory devise would not be defeated by common recovery and the intention of the testator thus frustrated. Its whole purpose was to sustain the executory devise and to effectuate the testator's intention. But an executory devise after an absolute gift to the first taker coupled with a power of disposal is not destructible in that sense. It is merely destructible in the sense that, according to the intention of the testator, it may fail to take effect if the power is exercised, because the testator has so provided. Thus Kent's view produces an effect about as inconsistent with *Pells v. Brown* as can well be imagined, since it defeats the intention of the testator and destroys the executory devise."

Executory interests are common in this state. *Platt v. Woodland*, 121 Kan. 291, 246 Pac. 1017; *Beverlin v. First National Bank*, 151 Kan. 307, 98 P. 2d 200. See, *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953.

Where the first taker is given the power to transfer his interest by deed or will, there is no restraint on alienation, hence a gift over on intestacy seems to be free from any valid objection. In Gray, Restraints on the Alienation of Property, 2d ed., § 57, it is stated:

"It has been often said and held that a devise to A. in fee, but if A. dies without having disposed of the land by deed or will, then over to B., is bad. It is not at first easy to say why this should be so; the owner of the land has full power of alienation, either by deed or will. It rests indeed with him to say whether the gift over shall take effect, but that is the case with many executory devises. A devise may be made to A. with a gift over, unless at his death he has been married, or has been called to the bar, or has gone to Rome, or has given $100 to B.; and no one will question that the gift over is good, although it may rest entirely within A.'s control whether the event which is to prevent the gift over shall take place or not. What illegality is there in

an executory devise depending on A.'s not making a deed or will, if he has the power of making one should he so wish?"

We are now committed to the doctrine that a gift over on intestacy is good. It is certainly sound in principle (see *Hoover v. Roberts*, 146 Kan. 785, 797, 74 P. 2d 152) and has the merit of carrying out the intention of the testator.

It is to be carefully observed, however, that where the power to transfer is in a particular manner—as by deed only—or by will and not by deed, the rule adopted would seem to have no application. Obviously, if the first taker is authorized to transfer by will only, it would be a restraint on alienation by deed.

HARVEY, J. (concurring): Having written the opinion of the court, naturally I concur in it and would write no more if it were not for the new questions raised by the concurring opinion of Mr. Justice Allen which, after quoting from the will, is predicated upon the assertion: "It is clear that the widow was given the power to dispose of the property by deed or by will. . . . The real question then is whether a gift over on intestacy is good." I think this opinion should not have been written, for two reasons:

*First,* the widow did not leave a will; the questions whether she was given power by the will of her husband to dispose of the property by will, and, if she had such power, the effect of her not exercising it, are questions which were not raised in the trial court; were not decided by it; were not presented to this court as questions to be decided here; were not argued by counsel, and were not considered by this court in consultation. The first time the other members of the court had any intimation that anyone having anything to do with this case had the notion these questions were presented by this appeal was when Justice Allen, after having the opinion of the court on his desk for nearly three weeks, sent in his concurring opinion only three days before the opinion, without it, would have been handed down.

*Second,* the premise on which the separate opinion rests—that by the testator's will "the widow was given the power to dispose of the property . . . by will," is unsound as a matter of law. The applicable rule, as I understand it, may be stated thus: When a testator gives property to A, with power to use and dispose of it during his lifetime, and specifically gives to B that part of the property not thus consumed, A has no power to dispose of the property by will.

The reason for the rule is that to permit A to dispose of the property by will would be to permit A to defeat the will of the testator, who already by his will had given the property to B. In 69 C. J. 848, treating of the subject of the various powers given under differently worded wills, it is said:

"A power to dispose of property, . . . is not exercisable by will, . . . where there is a gift over of whatever of the property remains undisposed of at the donee's death, and nothing to indicate that a disposition by will was contemplated by the donor," (citing many cases, including *Smith v. Judge,* 133 Kan. 112, 453, 298 Pac. 651, 1 P. 2d 79.)

Later cases to the same effect are: *Masterson v. Masterson,* 344 Mo. 1188, 130 S. W. 2d 629; *Cochran v. Groover,* 156 Ga. 323, 118 S. E. 865; *Davis, Administrator, v. Bottoms,* 258 Ky. 228, 79 S. W. 2d 963; *Carpenter v. Lothringer,* 224 Ia. 439, 275 N. W. 98; *Phillipson v. Watson,* 149 Kan. 395, 403, 87 P. 2d 567.